EDWARD MEEKER v. EMMA SPALSBURY AND CHARLES C. SPALSBURY.

Submitted December 8, 1900—Decided February 25, 1901.

1. To constitute an eviction of a tenant by his landlord there must be not a mere trespass, but something of a permanent character intended to deprive, and which does deprive the tenant of the use of the demised premises or some part thereof.
2. A lease of a building and appurtenances reserved to the landlord permission to make such repairs or alterations in the demised premises as should be necessary for the preservation thereof. During the term demised the tenant abandoned the premises and, subsequently, the landlord entered and remodeled the building, making extensive alterations beyond any necessity for preservation. *Held*, that such acts constituted a surrender by act and operation of law.

On case certified from the Circuit Court of the county of Essex, condensed as follows:

On September 1st, 1894, the plaintiff, by written lease, under seal, demised to the defendants, for a term of five years, from October 1st, 1894, at the yearly rent of $1,100, payable monthly, in advance, the "Essex Hotel," on Washington Place, East Orange, access to which, by passage-way from Prospect street, was thereby guaranteed. In the lease the tenants, among other things, agreed that the landlord might enter into and upon the demised premises, at reasonable hours in the daytime, to examine the same, or to make such repairs or alterations as should be necessary for the preservation thereof; and that, if the said premises should become vacant or be deserted during said term, might re-enter the same, at his option, and re-let them and receive and apply the rent so received to the payment of the rent due by those presents.

The defendants conducted a hotel business on the demised premises until July, 1898, when, having paid the rent for that month, they moved their business to a building erected by them in the vicinity and delivered the key of the building on the demised premises to the agent, for collecting rent, of the plaintiff—stating that they had left the demised premises, and would pay no more rent. Previous to that time the passage-way from Prospect street had been partially obstructed by other tenants of the plaintiff, but without the plaintiff's authority, except as to certain ladders and scaffolds, kept in place against the wall by posts from floor to ceiling, and which were thus customarily kept there at the time of the demise to the defendants. About a year after the demise the posts were removed, and the ladders and scaffolds and the other obstructions, to some extent, interfered with the free use of the passage-way by the defendants and their patrons. The defendants demanded of the plaintiff the removal of the obstructions, particularly the ladders and scaffolds, and was told by the plaintiff that those were there of right. Such partial obstruction of the passage-way continued down to the time of the trial.

The plaintiff recovered from the defendants, by action at

'law, rent for the demised premises for the months of August and September, 1898. On September 20th, 1898, in reply to a letter from one Yost, inquiring as to renting said premises, the plaintiff wrote a letter as follows:

"DEAR SIR—Your letter was received. I cannot immediately give you an answer in regard to the building you speak of. I hope (I think I may say I expect) to have it in my possession within two weeks. The rent heretofore paid for it has been $1,100 per annum. I should be pleased to confer with you further about it."

Early in October, 1898, the plaintiff entered the demised premises and remodeled the building, so that it could be rented either as a hotel or for flats. When the work was begun the premises were in good condition and repair. The work went on continuously for more than two months, during which the premises were untenantable. The alterations and changes were made in pursuance of plans drawn for the plaintiff. They cost about eighteen hundred dollars, and were made without consulting the defendants. They involved, among other things, differences in the size, number and arrangement of rooms throughout the building.

On December 23d, 1898, the plaintiff, by written lease, under seal, demised said premises to Adolphus Schluer, for a term of three years and nine months, from January 1st, 1899, at the monthly rent, payable in advance, of $50, to October 1st, 1899, and at the yearly rent of $1,250 thereafter during the term; and agreed to make certain specified improvements and additions. Schluer made like agreement to that of the defendants in their lease, as to entry and reletting, with the further provision that any alterations might be made if the premises became vacant or deserted, provided that no longer than six weeks were required therefor, without liability to any claim of a surrender by the lessee. The rent reserved in this lease was as large as could reasonably have been obtained.

The pending suit in the Circuit Court was brought after September 1st, 1899, for the rent under the lease to defendants, for the period from December 1st, 1898, to October 1st,

1899, with a credit of $50 for each month in 1899. At the time the suit was begun an action in the District Court of Newark for the rent for October and November, 1898, was pending on *certiorari* in this court.

The following are the questions propounded for the advisory opinion of this court:

*First.* Do the facts, as above stated, constitute an eviction by the landlord of the tenants from any part of the demised premises?

*Second.* Do the actions of the tenants in leaving the key of the demised premises with the agent of the landlord, and informing such agent that they had abandoned the property and would pay no more rent, and the action of the landlord in re-entering and making the repairs and changes above stated, and all other actions of the parties hereto, as above stated, constitute such a surrender in law of the demised premises as relieves the defendants from all liability for rent?

Before DEPUE, CHIEF JUSTICE, and Justices DIXON, GUMMERE and COLLINS.

For the plaintiff, *Philemon Woodruff.*

For the defendants, *William Read Howe.*

The opinion of the court was delivered by

COLLINS, J. The leading case on constructive eviction is *Upton* v. *Townend, &c.,* 17 *C. B.* 30, accepted by this court as declarative of the law in *Morris* v. *Kettle,* 28 *Vroom* 218. In that case, Chief Justice Jervis (at *p.* 64) said that eviction must be "not a mere trespass, but something of a grave and permanent character done by the landlord with the intention of depriving the tenant of the enjoyment of the demised premises;" and Mr. Justice Willes (at *p.* 72) more fully and accurately defined it as "an act of a permanent character done by the landlord in order to deprive, and which had the effect of depriving, the tenant of the use of the

thing demised, or of a part of it." This definition has been generally approved in this country. *Tayl. Land. & T.,* § 377, *note* 3. The temporary obstruction, therefore, of the passage-way to the Essex Hotel, recited in the case certified, could not constitute an eviction, even if the exclusive use of the passage-way can be deemed a part of the demised premises. The remedy, if any, of the tenants for such obstruction as was authorized by the landlord was not to cease paying rent, but to seek damages for breach of the landlord's implied covenant for quiet enjoyment.

Under the same case of Upton *v.* Townend, the alterations recited might constitute an eviction, but, as applied to the tenants' abandonment of the demised premises, their effect was rather that of an acceptance of a surrender of the term. By the statute of frauds such a surrender must be in writing, unless arising by act and operation of law. *Gen. Stat., p.* 1602, § 2. The new demise to Schluer, standing alone, would not effectuate a surrender, for a re-letting was expressly authorized if the premises became vacant or deserted, and, as it appears that the rent secured for the unexpired term was all that was procurable, the tenants could not complain that the demise was made to extend beyond that time. The new lease, with its peculiar provisions, like the previous letter to Yost, might be evidential of the intention of the landlord in his conduct after re-entry, but was not, of itself, an acceptance of a surrender by the tenants. This case must turn on the remodeling of the building after its abandonment by the tenants. We need not consider what would have been the effect of the radical changes made had there been no provision in the lease on the subject, though there is judicial opinion that even in such case the tenancy would have been legally determined. *Tayl. Land. & T.,* § 515; *Wood L. & T.* (2d ed.), § 494, and cases cited. In the case in hand the parties, by their own agreement, limited the rights of the landlord after, as well as before, an abandonment of the demised premises. He was to have the right to enter and make such repairs as should be necessary for the preservation of the premises. When the plaintiff did more than that he con-

clusively evinced his intention to hold possession on his own account, thereby accepting the tenants' abandonment as a surrender.

When the minds of the parties to a lease concur in the common intent of relinquishing the relation of landlord and tenant, and execute this intent by acts which are tantamount to a stipulation to put an end thereto, there, at once, arises a surrender by act and operation of law. *Talbot* v. *Whipple,* 14 *Allen* 177, 180, and cases cited; *Woodf. Land. & T.* 302.

Accordingly, to the *first* question propounded by the Circuit Court, we answer that there was no eviction, and to the *second* that the particular acts recited in the question did constitute such a surrender in law of the demised premises as relieves the defendants from all liability for the rent sued for in the pending action.