MAURICE BRILL and SAMUEL BRILL, Respondents, *v.* MARIA R. FRIEDHOFF and ANNA M. WUEHRMANN, as Surviving Executors, etc., of JOHN PETER FRIEDHOFF, Deceased, Appellants.

First Department, July 9, 1920.

Landlord and tenant — lease giving landlord option to rescind or relet premises as agent for lessee — execution of new lease to third person by landlord — when question as to whether landlord accepted surrender of lease for jury — erroneous direction of verdict.

Where a lease, among other things, provided that if any of the obligations of the tenants thereunder should remain unpaid or in case of the breach of any covenant the lessors might re-enter and repossess their former estate therein or at their option relet as agents of the lessee in the name either of the lessors or lessees, and after applying the rent received under a new lease on the obligations of the lessees under the former lease pay over to them any surplus, and the lessors before the expiration of the term and with the authority of the tenants evidenced by a letter providing that there should not be a surrender of the premises or of the lease executed a new lease to a third person for a term the duration of which exceeded that of the former lease and which provided for a reletting in case of a default by the new tenants, surplus rent to go to them instead of to the old tenants, and the new tenants were required by the instrument to remodel the prem-

ises where the old tenants were merely required to make ordinary repairs, and the new lease entitled the new tenants to possession for a certain term without rent and was subject to mortgages not provided for in the original lease and contained a cancellation clause which was solely for the benefit of the owners, it is a question of fact for the jury as to whether the landlords had accepted a surrender of the premises on making the new lease, and it was error to direct a verdict for them for rent due thereunder on the theory that as a matter of law the lessors had made the new lease as agents for the tenants.

GREENBAUM, J., dissents, with opinion.

APPEAL by the defendants, Maria R. Friedhoff and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 26th day of February, 1919, upon the verdict of a jury rendered by direction of the court, also from an order entered in said clerk's office on the 29th day of January, 1919, denying defendants' motion for a new trial made upon the minutes, and also from an order entered in said clerk's office on the 20th day of February, 1919, directing said clerk to tax costs and disbursements against the defendants in favor of the plaintiffs.

*William Bondy,* for the appellants.

*Ira Skutch* of counsel [*Herbert H. Maass* with him on the brief], *Feiner & Maass,* attorneys, for the respondents.

DOWLING, J.:

On October 30, 1907, plaintiffs leased to Henry C. Meyer the premises known as No. 51 Cortlandt street in the borough of Manhattan, city of New York, for the term of twelve years from October 1, 1907, at the yearly rental of $9,000 per annum, payable in equal monthly installments in advance, until May 1, 1909; and at the yearly rental of $11,500 for the remainder of the lease, payable in like manner. The lease contained the following clause: "And the said lessee further covenants and agrees to take good care of the building upon the demised premises and keep the same in good order and condition, and suffer no waste or injury, and that he will at his own cost and expense make and do all repairs required to the exterior and interior of said demised premises, including the roofs, vaults, sidewalks, water and sewer connections, water and gas pipes

First Department, July, 1920.        [Vol. 192.

and all other fixtures and appurtenances to or connected with said premises, and shall not call upon said lessor for any disbursements or outlay for any such or similar purpose during the hereby granted term, and shall at the end or other expiration of the term or any renewal thereof, quietly and peaceably deliver up the demised premises together with its fixtures and appurtenances and all improvements and additions that may have been made to said premises during the demised term in good order and condition, damages by the elements alone excepted."

The tenant further covenanted and agreed: " To promptly execute and fulfill all ordinances of the City of New York applicable to said demised premises, and all order and requirements imposed by and make all repairs required by the Board of Health, Police, Building, Tenement House and Fire or other Municipal Department of the City of New York issued in connection with said demised premises, at his own cost and expense, as soon as the same are required to be made."

The tenant also agreed to pay all taxes, assessments and Croton water charges that might be levied or assessed upon the property during the term of the lease and any renewal thereof, as well as all taxes for the year 1919. It was also provided: "And it is further covenanted and agreed by and between the parties hereto that in case the rent herein reserved, or any part thereof (including the taxes, assessments, water rents and insurance premiums herein agreed to be paid as additional rent by said lessee, and also any other charges which may be levied, assessed or imposed, according to law, upon said demised premises), shall be at any time unpaid when due or the demised premises shall become vacant, or in case of the breach of any covenant whatsoever herein contained on the part of the said lessee to be done, kept or performed, then and thenceforth it shall be lawful for the said lessor to re-enter upon the said demised premises, or any part thereof, and the same to have again, repossess and enjoy, as in their first and former estate, anything herein contained to the contrary notwithstanding; or the said lessor may, at their option, relet the said premises from time to time, as the agent of said lessee, in the name of either the lessor or the lessee, collecting and applying the avails to pay the expenses of recovering possession and

then to pay the rent reserved in this lease, rendering the over-plus, if any, at the end of the term, to said lessee, who, however, shall in case of re-entry, and whether the premises are relet or otherwise, remain liable during said term, or renewed term, for a sum equal to the rent herein reserved and payable at the same period, less the avails of re-letting, if any."

The tenant covenanted to make improvements in said premises, to cost not less than $5,000, before May 1, 1909. It was agreed that " No surrender before the expiration of the term demised of the premises herein leased shall be valid unless accepted by the lessor in writing, and any notice which under the terms of this indenture is to be given by the lessor to the lessee shall be given by mailing such notice enclosed in a post-paid envelope directed to said lessee at No. 51 Cortlandt Street, in the Borough of Manhattan, City of New York."

The lease contained the following provision: "And in order to induce the lessor above-named to make, execute and deliver this lease to the lessee herein, and in consideration of One Dollar ($1.00) paid by said lessor to John P. Friedhoff, the receipt whereof is hereby acknowledged, the said John P. Friedhoff expressly covenants and agrees that said lessee shall observe and fulfill all the terms, covenants and conditions herein contained on his part, and that he, said John P. Friedhoff shall be liable to the said lessor on account or by reason of any damage, loss or injury sustained by said lessor by reason of the breach of or failure of the said lessee to perform any of the covenants, conditions or reservations contained in this lease on his part to be performed, or to answer in damages therefor; which agreement on the part of said John P. Friedhoff is evidenced by his execution of these presents." The lease was executed by plaintiffs Henry C. Meyer and John P. Friedhoff.

Meyer entered into possession of the demised premises. John P. Friedhoff died on July 29, 1910, and defendants, with one August Beckman, were appointed and qualified as executors of his last will and testament. August Beckman died on September 5, 1912, leaving defendants the surviving executors of said will. The lease in question was transferred to Maria R. Friedhoff on February 11, 1915, and thereafter on April

17, 1915, an agreement in writing was entered into between plaintiffs and Maria R. Friedhoff whereby the original lease was modified so that the landlords waived the payment by her of any and all land taxes assessed by the city of New York on and after the 2d day of May, 1915, it being understood that the modification should not be so construed as to relieve her from paying the land taxes which would be assessed by the city of New York for the first half of the year 1915, becoming a lien May 1, 1915. It was further agreed that all other taxes, assessments, water rates and Croton water charges that had or might thereafter be assessed against the premises or any other charges by the United States or the State of New York, or any municipal law or ordinance should be paid by Maria R. Friedhoff. It was further provided:

"*Fourth.* It is particularly understood and agreed, that all the other terms, covenants and conditions of the aforesaid lease, except as herein modified, are hereby fully ratified and confirmed, and the party of the first part (the tenant under said lease), does hereby, in consideration of the premises, assume and agree to pay all sums now due or that may hereafter accrue from and out of said lease."

Under an instrument dated May 29, 1915, Maria R. Friedhoff and Anna M. Wuehrmann, as executors and trustees under the last will and testament of John P. Friedhoff, deceased, consented to the execution of the agreement before recited and provided that:

" We do, as said trustees, hereby further guarantee to Samuel Brill and Maurice Brill to fully and faithfully perform each and every term, covenant and condition of the aforesaid lease as modified by the foregoing agreement, and we do, as said trustees further guarantee such payment of the rent and other sums of money reserved to be paid in said lease promptly without notice.

" Nothing herein contained nor in the foregoing modification agreement contained shall be deemed in any manner to relieve the estate of John P. Friedhoff, from any and all liability that might arise out of the aforedescribed lease as modified. But nothing herein contained shall be construed as creating any personal liability on the part of the undersigned, Maria R. Friedhoff and Anna M. Wuehrmann."

Maria R. Friedhoff, in order to induce plaintiffs to agree to the modification of the lease, represented that she was the sole owner of the lease in question, and set forth the chain of title thereto, the assignments being from Meyer to Maria A. Friedhoff and Anna M. Wuehrmann, by them to the Hub Cafe Corporation, by the latter to the Cortland Cafe Corporation, and finally by it to Maria R. Friedhoff on February 11, 1915. The instrument and affidavit in question were attached to the agreement and delivered by defendants in exchange for the agreement signed by plaintiffs.

On August 25, 1916, the following letters were signed, executed and delivered to plaintiffs:

" FREDERICK W. BLOCK,
" Counsellor at Law,
" 150 Nassau Street,
"Manhattan     New York.

---

" Telephone 4833 Beekman

*"August 25th,* 1916.

" Messrs. SAMUEL & MAURICE BRILL,
" Union Square South,
" New York City:

" DEAR SIRS.—I have this day handed to your representative the keys of the premises at No. 51 Cortlandt Street, Manhattan, New York City, for the purpose of showing the same to prospective tenants. You are hereby authorized to collect such rents as may accrue from said premises for our account and to show and let the same for the balance of our term, for our account, in order to reduce any damage for which we are or may become liable and this arrangement is not to be considered as a surrender by us of said premises or the lease or the term thereby demised nor an acceptance thereof by you; nor to relieve us from any liability by us to you under the lease now in force, held by us of said premises.

" Yours very truly,
" ESTATE OF JOHN P. FRIEDHOFF,
" MARIA R. FRIEDHOFF,
" By FREDERICK W. BLOCK,
*"Attorney."*

" BAYONNE, N. J., *Aug.* 25, 1916.
" To Tenants at
  " 51 Cortlandt St.,
    " N. Y. City:
 " GENTLEMEN.— Upon presentation of this note, kindly deliver to Brill Bros. or their agents all rents due on and after August 1st, 1916, these instructions to be effective until otherwise advised.
   " Yours respectfully,
    " EST. OF J. P. FRIEDHOFF,
     " By H. D. WUEHRMANN,
      *"Atty. in fact."*

Plaintiffs did not make any new lease of the premises in question until October 31, 1916, when they executed a lease thereof to John D. Haffner and Stephen J. Haffner for the term of ten years, commencing August 1, 1917, at the annual rental of $8,500 payable in equal monthly payments. This lease contained covenants that the tenants should make all necessary repairs to the building, both to the inside and outside thereof and repair and keep in repair the equipment and appurtenances of the building, as well as the renewal thereof, including the roof, airshafts, sidewalks, water and sewer mains to the street line and that the tenants should paint and repair and renew, if required, the fire escapes; they should remove all snow and ice from the sidewalks in front of the premises and make good any damage caused by the overflow or escape of water, steam, electricity or gas resulting from the negligence of the tenants or their subtenants, agents or employees. The tenants were to comply with all rules, orders, ordinances, violations, regulations and requirements of any State, county, city or borough authority. The premises might be used for the sale of liquors on and after August 1, 1917. The lease was to be subject to all mortgages then on the premises, and to any new mortgages that might be placed, not exceeding $75,000. The tenants deposited $1,500 as security for the performance of the lease, to be returned to the tenants on August 1, 1927. In case of a sale, or taking of condemnation proceedings of the premises, the tenants were to vacate the premises upon receiving sixty days' written notice, upon

payment, if the notice should be given before August 1, 1922, of the sum of $10,000; and diminishing yearly thereafter. The tenants were to pay the Croton water charges. The lease contained this provision:

" *Twenty-first.* The landlords hereby agree to deliver possession of the demised premises to the tenants on or before the 1st day of April, 1917, and to permit the tenants to use and occupy the said premises from said date to the day of the date of the commencement of this lease as hereinbefore provided, without cost or charge to the said tenants by way of rent, and in consideration thereof the tenants hereby agree to enter upon said premises on or about the aforesaid date and make additions, alterations and improvements thereon and thereto at their own cost and expenses, which shall cost not less than Four thousand dollars ($4,000); on or before the date filed for the giving of possession by the landlords to the tenants as hereinbefore provided, the tenants shall submit to the landlords plans and specifications, of the proposed alterations and improvements and no work shall be commenced thereon by the tenants until the approval of the landlords to such plan and specification shall have been first had and obtained, and such plans and specifications shall likewise be filed with the Bureau of Buildings and any and all other appropriate Departments or Bureaus and approved by them before work thereon shall be commenced by the tenants."

Provision was made for the giving of a bond in the sum of $4,000 conditioned for the making of the alterations before the commencement of the lease and that no lien or claim should be made against the property as the result of making such alterations.

This action is brought to recover the sum of $8,856.70, with interest, being the amount of the rent unpaid for the period from November 1, 1916, up to and including the month of September, 1917, viz., $10,541.63, together with Croton water charges amounting to $46.73 during said period, in all $10,588.36, from which plaintiffs admit that they have received the sum of $1,731.66 on account, leaving the balance sued for. The learned trial court directed a verdict for the plaintiffs in the sum of $8,719.20, being the sum of $10,588.36, less payments concededly received by plaintiffs, aggregating

$1,869.16. This was upon the theory that as a matter of law there had been no surrender of the lease by the tenants and acceptance thereof by the landlords. In this I think he was in error. While the letter from the tenants accompanying the delivery of the keys to the landlords' representative expressly stated that the arrangement between the parties was not to be considered a surrender of the demised premises by the tenants nor an acceptance thereof by the landlords, that is not the only element to be considered in determining what the agreement of the parties really was, but it is to be taken into consideration in connection with what the landlords did in relation to the premises after taking possession thereof. Was their reletting of the premises done pursuant to their authorization from the tenants and in accordance with the specific authority given them to relet, or was it pursuant to an assumption of ownership by them in hostility to the tenants' continued rights and consequently recognizing a surrender of the premises?

In the first place it is to be noted that the authorization to the landlords was to let the premises for the balance of the term for the tenants' account, and in order to reduce any damage for which they were or might become liable. The lease of the tenants, by the terms of their hiring, was to expire September 30, 1919. The new lease which the landlords made to the Haffners began on August 1, 1917, and was to terminate on July 31, 1927 — nearly eight years after the termination of the original lease. There is no separation or apportionment between the two terms, nor any effort to distinguish the period ending September 30, 1919, to which a reletting could alone have been made by plaintiffs, as agents for the tenants, from the further period over to 1927, which plaintiffs could deal with only in their own rights as owners. There is no written acceptance of the terms of these letters by plaintiffs. The term created by the new lease is one of the elements entering into the question of whether it was executed by plaintiffs in their right as owners or partly as such and partly as agents for their original tenants.

(2) The differences in the provisions of the leases to Meyer and to the Haffners are elements to be considered in determining the capacity in which plaintiffs executed the new lease.

(a) Thus, the original lease to Meyer provided that on default in the payment of rent it should be lawful for the lessors to re-enter upon the premises and the same to have again, repossess and enjoy as in their first and former estate or at their option to relet the premises from time to time as the agent of the lessee, paying to said lessee the overplus, if any, received therefor, at the end of the term; while the new lease provided that on default in the payment of rent the landlords might at their option re-enter the premises and relet them for and on account of the tenants, receive the rent therefor, apply the same to the payment of the rent, and the lessors agreed to return to the tenants the surplus if any there be.

It could be claimed that the provision in the new lease requiring all surplus arising from a reletting of the premises to be paid to the tenants Haffners is entirely inconsistent with the continued existence of the lease to Henry C. Meyer, and with the provision therein that if the premises are relet from time to time the overplus shall be paid to Henry C. Meyer, for the Haffners were not assignees of Henry C. Meyer. They did not have any interest in the lease to Meyer.

The rent reserved in the lease to Meyer was $9,000 per annum until May 1, 1909, and thereafter $11,500. At the time the letters of August 25, 1916, were delivered the rent was $11,500. The rent reserved in the Haffner lease was $8,500. Therefore, if the landlords had retaken possession under the Haffner lease and relet for the account of those tenants, any surplus over $8,500 would have gone to the Haffners under the terms of their lease and not to the tenant under the Meyer lease, which latter would thus have sustained a direct loss. This would appear to be in accord with the theory that plaintiffs were acting on their own behalf as owners and not as agents of the tenant under the Meyer lease. For otherwise there would be no justification for disregarding the provision of the original lease and agreeing to pay over any surplus to the new tenants, instead of to the old, if they were still liable. It is a question, therefore, whether the making of a lease whereby the plaintiffs bound themselves to pay the overplus resulting from a reletting to the Haffners was an exercise of dominion over the property entirely inconsistent with the continued existence of a lease requiring them

to pay that overplus to Meyer, and entirely inconsistent with the theory that they acted as agents for Meyer in making the new lease.

(b) The lease to the Haffners provided that they should make alterations in the building at a cost of not less than $4,000, and alterations were in fact made by them. This is not a case of the landlord making such alterations and repairs as might be required to make the premises desirable or fit for occupancy or to secure a suitable tenant therefor. Such repairs or alterations the landlord could of course make without accepting a surrender of the premises or exercising dominion as owners, for where he was authorized to relet for the benefit of the tenants and to reduce their damage he would be authorized to do whatever was reasonably required to effectuate such purpose. But here the landlord required the new tenants to make extensive alterations and improvements, not shown to be necessary to effect a lease under the authority to relet. It may be argued that this assertion of a right to compel or permit extensive alterations in the demised premises presumes the exercise of dominion by the owner, and not by an agent for original tenants, who had no obligation or right so to make alterations or improvements after May 1, 1909, but only to make repairs.

In *Meeker* v. *Spalsbury* (66 N. J. L. 60) the lease of a building reserved to the landlord permission to make such repairs or alterations in the demised premises as should be necessary for the preservation thereof. During the term demised the tenant abandoned the premises and subsequently the landlord entered and remodeled the building making extensive alterations beyond any necessity for preservation. It was held that such acts constituted a surrender by act and operation of law.

It has been held, where the tenant abandoned demised premises and sent the key thereof to the landlord who entered thereupon and made repairs, thereafter making a new lease beginning a month before the original lease terminated and extending a year beyond the original term, that the landlord thereby rescinded the agreement and terminated the relation of landlord and tenant. (*MacKellar* v. *Sigler*, 47 How. Pr. 20.)

Here the letter of August 25, 1916, authorized plaintiffs to take possession of the premises, but for specified purposes only. Whether they exercised the authority thus given when they authorized the Haffners to make alterations in the building not provided for by the Meyer lease or acted in so doing as owners, must be a question of fact, to be decided upon all the testimony, involving as well whether such alterations were necessary to any reasonable reletting of the premises.

(c) The lease to the Haffners provided that the landlords agreed to deliver possession of the demised premises on or before April 1, 1917, and to permit them to occupy the same without cost or charge by way of rent until the lease commenced, August 1, 1917. Was this an exercise of dominion by the owners, who had taken full charge and control of the premises in their own right? For the letter from the original tenants provided for the reletting of the premises and the collection of rent that the damage to the tenants might be reduced, and conferred no authority to give free possession of the premises to any one. Nor was it shown that such free occupation was necessary to effect a lease of the premises; or that it was not merely an inducement to a long lease and an improvement of the premises for the benefit of the owners only.

(d) The lease to the Haffners provides that it shall always be subject to mortgages on the premises now or thereafter placed, aggregating not more than $75,000. This obviously was for the interest of the owners, and is not the original lease to Meyer.

(e) The lease to the Haffners contained a cancellation clause whereby upon making certain graduated payments for different periods, the owners in the event of the sale or condemnation of the premises, may terminate the lease and the tenants agree to vacate. This is for the benefit of the owners and was not in the original lease to Meyer.

From all these considerations it follows that it was error to direct a verdict for plaintiffs; that the facts proved upon the trial did not establish, as a matter of law, that plaintiffs in making the lease to the Haffners acted as the agents of the original tenant and pursuant to written authority therefrom; that it was not established as a matter of law that there was

no surrender of the demised premises to plaintiffs and no acceptance thereof by them. It also follows that there was a question of fact to be passed upon by the jury as to whether plaintiffs had accepted a surrender of the demised premises and retaken possession of the same in their own right as owners and executed the lease to the Haffners in their own right as owners and not as agents of the original tenants.

The judgment and orders appealed from will, therefore, be reversed and a new trial ordered, with costs to appellants to abide the event.

Clarke, P. J., Smith and Page, JJ., concur; Greenbaum, J., dissents.

Greenbaum, J. (dissenting):

The prevailing opinion bases its reversal upon the ground " that there was a question of fact to be passed upon by the jury as to whether plaintiffs had accepted a surrender of the demised premises and retaken possession of the same in their own right as owners and executed the lease to the Haffners in their own right as owners and not as agents of the original tenants."

When the case was closed by both sides the plaintiffs moved for a direction of a verdict in their behalf. The defendants neither moved to dismiss the complaint nor for a direction in their favor, nor did they request the trial court to submit any question of fact to the jury, thereby in effect conceding that there was no question of fact for the jury's consideration.

The defendants contented themselves with an exception to the court's ruling in granting plaintiffs' motion for a direction and with a further exception to the court's denial of their motion to set aside the verdict.

A study of the case on appeal reveals that the evidence is practically undisputed and that at no time during the trial was there the slightest intimation that the reletting to the Haffners constituted a surrender by defendants and an acceptance by plaintiffs of the demised premises. Nor was there the remotest suggestion that the reletting was not accomplished pursuant to the written agreement of the parties as embodied in the two letters dated August 25, 1916, which are set out in

the majority opinion. Indeed, the answer of defendants expressly admits the payment of $1,731.66, which the plaintiffs alleged in their complaint they had received on account of the rental sued for.

Upon the trial it was undisputedly shown that these moneys were received by the plaintiffs from the Haffners under their lease and credited to defendants who acquiesced in the application of the credit. There was thus no dispute that the defendants recognized that the Haffner lease was made with their approval. Nor is there the slightest hint in the record that the plaintiffs did not make honest efforts to relet the premises, or that they did aught which would reflect upon their integrity, or is there anything which would suggest bad faith on their part.

At the close of plaintiffs' case a motion was made to dismiss the complaint upon certain grounds which did not include the point of a " surrender and acceptance." Surrender was a defense, the burden being upon the defendants to establish it. There was, however, no claim, nor evidence offered on defendants' behalf on the trial that the premises were surrendered or that the surrender resulted from the reletting to the Haffners.

Besides, it must be borne in mind that the proof was that defendants left the keys to the premises with plaintiffs' agent upon the understanding that the landlords were to relet for the account of the defendants " in order to reduce any damage for which we are or may become liable and this arrangement is not to be considered as a surrender by us of said premises or the lease or the term thereby demised nor an acceptance thereof by you; nor to relieve us from any liability by (*sic*) us to you under the lease now in force, held by us of said premises."

The reletting, therefore, was not made pursuant to the terms of the lease, but by virtue of a special request of the defendants *aliunde* the lease and upon the express agreement that the acts of the landlord as to reletting are not to be construed as a surrender of the premises or the acceptance thereof or as ground for relieving defendants from liability.

*Meeker* v. *Spalsbury* (66 N. J. L. 60) and *MacKellar* v. *Sigler* (47 How. Pr. 20) do not apply to such a situation as is here presented since the facts involved in those cases arose out of matters which affected the rights of the parties under

the lease and which in law operated as a surrender and acceptance.

It would seem to follow from what has been stated that it was wholly immaterial that the landlords permitted the new tenants Haffner to make substantial alterations upon the demised premises or gave them permission to occupy the premises during alterations without compensation or that the lease to the Haffners extended beyond the term of the original lease. Since there was no proof of surrender by reason of such acts, they are immaterial. Incidentally it may be observed for aught we know it was by reason of these concessions that the defendants were enabled to make the lease from which the plaintiffs profited.

The judgment should be affirmed.

Judgment and orders reversed and a new trial ordered, with costs to appellants to abide event.