# J. LAURENCE MILLISON *v.* JOSEPH ABEL CLARKE
## ET UX.

[No. 77, September Term, 1979.]

*Decided April 14, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*David M. Williams* for appellant.

*Thomas P. Smith,* with whom were *Baskin & Sears* on the brief, for appellees.

RODOWSKY, J., delivered the opinion of the Court.

This landlord's action for rent under a commercial lease involves the defense of surrender by operation of law on which a summary judgment in favor of the tenant was based. The principal question presented is whether the legal consequence of a reletting by a landlord to a new tenant, for a term extending beyond the expiration of the lease to the original, defaulting tenant, is the acceptance of a surrender, without regard to factors indicating the landlord's intent to the contrary. Phrased another way, the question presented is whether reletting beyond the original term is a factor of such overriding significance on the facts of this case as to have effected a surrender by operation of law as a matter of law. We hold that such a reletting does not inevitably have that legal result and that it was improper to grant summary judgment here.

The premises are located on State Route 232 in California, St. Mary's County, Maryland. Appellant, J. Laurence Millison ("Landlord"), by lease bearing the date of June 22, 1972, let the premises to Joseph Abel Clarke and Judith A. Clarke ("Tenants") for a term of ten years beginning September 1, 1972 and ending August 31, 1982. Rent was payable on the first of each month at an annual rate of $6,000 for each of the first two years of the term, $9,000 for each of the next three years and $12,900 for each of the last five years. Tenants covenanted not to use the premises for purposes other than a restaurant and food carryout. The lease provisions directly describing Landlord's rights upon default by Tenants are as follows:

> [I]f the rent shall be Ten (10) days in arrear the Landlord shall have the right to distrain for the same, and to re-enter and take possession; and if the Tenant shall violate any of the foregoing covenants on their part herein made, the Landlord shall have the right without formal notice to re-enter and take possession . . . .

The first phase of what thereafter transpired has been the subject of prior litigation. In summary, Tenants never paid any rent as such, the premises were not finished as a restaurant and food carryout, and the parties disputed the existence and extent of obligations to make the premises ready.[1] On January 2, 1973 Tenants[2] wrote to Landlord asserting certain work had not been completed, requesting a return of a $1,000 security deposit and expressing a

---

1. On appeal in the prior action, Millison v. Clarke, 32 Md. App. 140, 141, 359 A.2d 127, 128 (1976) the court stated that Tenants "never took possession under the lease . . . ." The trial court in this action stated that Tenants "never took possession of the property." No party to the present action has contended that Tenants held only an *interesse termini. See* Arthur Treacher's Fish & Chips of Fairfax, Inc. v. Chillum Terrace Ltd. Ptnshp., 272 Md. 720, 728-29, 327 A.2d 282, 287 (1974). The parties have treated Tenants as holding a leasehold estate which came into existence as a present possessory interest. We shall therefore consider the statement by the trial court as meaning simply that the restaurant and food carryout never commenced operations. Md. Rule 813 a.

2. All correspondence between the parties was written by counsel.

willingness to negotiate another lease "[w]hen, and if, the building is ever completed . . . ."

There followed an exchange of five additional letters through February 2, 1973, which concludes:

Again I must remind you that Mr. Millison intends to hold your client responsible for damages in full . . . . Hopefully he will find a new tenant under the same or substantially the same terms so that the damages assessed to Mr. & Mrs. Clarke will not be too excessive.

On May 10, 1973 Landlord leased the premises to Vernon Miles and Peggy Miles for a term July 1, 1973 through June 30, 1976 (the "Miles Lease"). Rent under the Miles Lease was less than the rent under Tenants' lease. Landlord advised Tenants of the Miles Lease by letter of January 14, 1974, stated that the rent paid under the Miles Lease would be credited to Tenants and suggested re-entry by Tenants since the Landlord had been informed that the Miles were "unable to make it in this location . . . ." Tenants replied that they "will not enter the premises" allegedly leased to them.

On February 5, 1974 Landlord sued Tenants claiming rent accrued from lease commencement on September 1, 1972 less credit. Landlord wrote Tenants on May 14, 1974 to advise of an assignment of the Miles Lease and stated:

Please keep in mind that we have also apprised you that we intend to help to mitigate the damages of Mr. and Mrs. Clarke by constantly searching for interim tenants during the period of the original lease obligation of your clients. It has not been in the past, it is not now, and it will not in the future be our intention to release your clients from the lease agreement obligations as contained in the lease dated June 22, 1972.

The prior action was tried in May of 1975, after Landlord had amended to claim through April 30, 1975. Judgment was in favor of Landlord, but in an amount unsatisfactory to him. On Landlord's appeal, that judgment was affirmed.

*Millison v. Clarke,* 32 Md. App. 140, 359 A.2d 127, decided June 28, 1976. The Miles Lease, as written, expired two days later.

Landlord again leased the premises on September 10, 1976 to C.E.L., Inc. That lease commenced November 1, 1976 for a term of fifteen years, or well beyond the August 31, 1982 expiration date of the lease to Tenants. The rent was $400 per month for the first 12 months, $500 per month for the second 12 months, and $600 per month for the third 12 months. Real estate taxes were made additional rent. In the fourth year and thereafter the "annual rental" was increased proportionately in relation to the "cost of living index as published by the United States Department of Labor . . . ."[3]

In the present action, filed May 20, 1977, Landlord claimed:

1. For rent payable under the lease to Tenants from May 1, 1975 (the rent day immediately following the cut-off of the period for which damages were claimed in the prior action) through October 31, 1976 (the day preceding the commencement of the lease to C.E.L., Inc.), less credit for rent received under the Miles Lease; and

2. For rent payable from November 1, 1976 (the beginning of the C.E.L. lease) through August 31, 1982 (the termination of the lease to Tenants), less credit for rent paid and projected to be paid under the lease to C.E.L., Inc.[4]

Each of the parties filed a motion for summary judgment. By Orders entered July 31, 1978, based upon a written opinion, the trial court granted Landlord's motion as to the issue of liability only, for the period May 1, 1975 through

---

**3.** The C.E.L. lease also provided that if "slot machines, pinball machines, or other gambling type equipment . . . become legal," Landlord would have the exclusive right to operate that equipment on the premises and, after deducting certain expenses, the net would be divided equally between Landlord and C.E.L., Inc.

**4.** Since the trial court held that the lease to C.E.L., Inc. effected an acceptance of a surrender, the merits of this claim and the other defenses asserted to it were not tried and decided below and are not before us.

October 31, 1976.[5] Tenants' motion was granted as to the period extending from November 1, 1976. It was held "as a matter of law, that the offer of surrender by the Clarkes was accepted by the landlord, Millison, at the time the C.E.L., Inc. lease was entered into." The trial court reasoned that the reletting by Landlord, for a term longer than that of the lease to Tenants "is inconsistent with the continuing operation of the original lease and is of an unequivocal nature demonstrating that the landlord has accepted the offer of surrender." This conclusion was strongly influenced by language in *Eidelman v. Walker & Dunlop, Inc.*, 265 Md. 538, 544, 290 A.2d 780, 784 (1972) and in *Wilson v. Ruhl,* 277 Md. 607, 611, 356 A.2d 544, 548 (1976), which will be discussed, *infra.*

The open issue of damages from May 1, 1975 through October 31, 1976 was tried non-jury. Cross-examination of Landlord developed that after the lease to C.E.L., Inc. was signed on or about September 10, 1976, Landlord permitted C.E.L., Inc. personnel to go into the premises to do the "different things" that they found "desirable." Landlord did not "think there was that much renovation to be done." Damages were awarded Landlord based on the full rent payable by Tenants less credits of two types:

1. Payments realized under the Miles Lease; and

2. An amount equal to the rent reserved under Tenants' lease apportioned for the period from the signing of the lease between Landlord and C.E.L., Inc. and its commencement date. This latter credit was allowed on the following analysis by the trial court:

> I also find that Mr. Clarke is entitled to a credit of $1,250, being the denial of the usage of the premises between September 10 through October 31st. I don't like doing that, the reason Mr. Millison did that, being Mr. Nice Guy and he has to get

---

5. An Affidavit of Vernon Miles, filed by Tenants, raised a genuine issue as to the amount of credit to which Tenants were entitled for payments made under the Miles Lease.

charged for it, but I believe for the sake of justice I must do that.[6]

Landlord perfected his appeal to the Court of Special Appeals, *Millison v. Clarke,* 43 Md. App. 75, 403 A.2d 384 (1979), which reached the following conclusions on the three issues involved:

Issue No. 1 — entry of summary judgment in favor of Tenants for the period November 1, 1976 through August 31, 1982: Reversed and remanded for retrial.

Issue No. 2 — denial of Landlord's Motion for Summary Judgment as to the liability of Tenants for the period November 1, 1976 through August 31, 1982: Affirmed.

Issue No. 3 — the amount of Landlord's damages for the period May 1, 1975 through October 31, 1976: Affirmed.

The Writ of Certiorari embraced each of these issues.

*Issues Nos. 1 & 2*

*Effect of the Lease To*
*C.E.L., Inc.*

The essence of the rationale of the Court of Special Appeals was that acceptance of a surrender, which a tenant tenders by abandoning the premises, is a matter of the intention of the landlord, that reletting beyond the original term is evidence of an intent to accept the surrender but is not conclusive of that intent, as a matter of law, in the face of other evidence from which a contrary intent can be inferred, and that the language in the *Wilson* and *Eidelman* decisions was strong *dicta* but was short of a holding that such a reletting effects a surrender as a matter of law.

It is clear that the acceptance of a surrender is a matter of intention. *Oldewurtel v. Wiesenfeld,* 97 Md. 165, 176, 54 A. 969 (1903).[7]

---

6. The trial court also observed that Tenants could not "successfully argue the surrender of the premises . . ." as to the period September 10 to October 31, 1976.

7. The landlord's bill of particulars in *Oldewurtel* reflects that there were three different relettings with credit given to the tenant up to the last day of the original term. Whether the third reletting actually extended beyond the original term does not appear from the opinion or briefs.

*Oldewurtel* also rejected a line of cases, illustrated by *Gray v. Kaufman Dairy & Ice Cream Co.,* 162 N.Y. 388, 56 N.E. 903 (1900), "to the effect that *a re-entry and reletting* of abandoned premises by the landlord *without the consent of the tenant,* would create a surrender, by operation of law." 97 Md. at 176, 54 A. at 970 (Emphasis added).

We have previously been presented with a landlord-tenant dispute in which there was a reletting which extended beyond the term demised to the defaulting tenant. *Lochner v. Martin,* 218 Md. 519, 147 A.2d 749 (1959). In that case the reletting was treated as one of a number of factors which were considered. The receiver of the insolvent, original tenant petitioned for recovery of rent which had been paid for the last five months of a five year lease. The tenant was placed in receivership during the second year of the term. The landlord relet three months after the receivership for a five year period at the same rent provided in the lease to the insolvent. At the time of the receiver's petition the landlord had in fact collected rent from the new tenant through the expiration date of the original lease. The threshold question presented was whether the landlord, in collecting rent on the reletting, was acting as agent for the defaulting tenant or whether the landlord's action after default amounted to an election to cancel and annul the lease. In determining the latter analysis to be correct we said:

> The landlords, prior to the sale of the assets of the lessee on the leased premises by the receiver, made improvements for the new tenant without the consent or permission of the receiver. They re-entered and took possession of the demised premises, and began the new tenancy as of May 1, 1954, giving the new tenant free rent for the month of April. The new lease was for a longer period than the original lease had to run. They filed a claim in the receivership proceedings for rent owing at the time only and no claim was made for possible future rent. These actions, *when considered together,* were inconsistent with anything except the termination

of the tenancy by the landlords. [*Id.* at 523, 147 A.2d at 752 (Emphasis added)].

There have been decisions in other states which have rejected the argument advanced here by Tenants. In *D. A. Schulte, Inc. v. Haas,* 224 Mo. App. 365, 287 S.W. 816 (1926), the tenant sought reversal, as a matter of law, of a judgment in favor of the landlord on the ground that the reletting extended beyond the term of the original lease. On that point the court held

> The fact that the landlord enters into a new lease, after abandonment . . . by the tenant, for a period extending beyond the expiration of the old lease is not conclusive as to the question of the intention of the parties, but is a matter to be submitted for the consideration of the jury along with other facts. [*Id.* at 366, 287 S.W. at 818].

A like conclusion was reached in *C. H. Little & Co. v. Gay Apparel Corp.,* 108 F. Supp. 762 (S.D.N.Y. 1952), an opinion by Judge Irving R. Kaufman. Tennessee law, which controlled, had not directly addressed the issue. The court was "inclined to the view that the Tennessee courts would not hold re-letting for a term beyond that fixed in the original lease conclusive as to intent as a matter of law . . . but rather would submit for determination by the trier of facts the question of whether the landlord's actual intent was to accept surrender." *Id.* at 763. This conclusion was bolstered, however, by the Tennessee rule requiring mitigation of damages. *Cf. McNally v. Moser,* 210 Md. 127, 141, 122 A.2d 555, 60 A.L.R.2d 388 (1956).

*Meeker v. Spalsbury,* 66 N.J.L. 60, 48 A. 1026 (1901) involved the reletting of a hotel after it had been extensively remodeled. On a case certified, the Supreme Court of New Jersey stated, "[T]he tenants could not complain that the demise was made to extend beyond [the unexpired term of their lease]," since it appeared that the rent secured for the unexpired term was all that was procurable. *Id.* at 64, 48 A. at 1027. The "new lease . . . might be evidential of the

intention of the landlord in his conduct after re-entry, but is not, of itself an acceptance of a surrender by the tenants." *Id.* However, the court went on to hold that the extensive remodeling constituted acceptance of a surrender since the original lease permitted re-entry only for such repairs as were necessary for the preservation of the premises.

Counsel have not directed us to, and our research has not disclosed, any decision, other than in New York, in which reletting beyond the original term has been the exclusive basis for a holding that a surrender by operation of law has been effected as a matter of law. In general, that factor has either been treated as evidence of the intent of the landlord or, in those cases in which a decision has been made as a matter of law, the length of the reletting has been combined with one or more other factors on which the decision was based.

Three Pennsylvania decisions have addressed the problem without holding that a reletting beyond the term is conclusive of the landlord's intent. The landlord in *Rafferty v. Klein,* 256 Pa. 481, 100 A. 945 (1917) had obtained judgment based on the insufficiency of the affidavit of defense by guarantors of the original tenant. It was held that if the landlord "took possession of the demised premises, and *without notice to the principal or surety* made a lease thereof to a new tenant, for a term of years extending far beyond the expiration of the original term," the landlord could not recover rent subsequent to the beginning of the new term. *Id.* at 486, 100 A. at 947 (Emphasis added). The matter was remanded with the observation that the "case is such that the rights of the parties can be best determined by a trial, where all the facts and circumstances may be developed." *Id.* at 487, 100 A. at 947. *Ralph v. Deiley,* 293 Pa. 90, 141 A. 640, 61 A.L.R. 763 (1927) involved a series of relettings, the last of which was within the original term but which carried an option in the tenant to extend two years beyond. The court observed in *dicta* that had the last of the new leases "created a term extending beyond that in the original lease, it would *indicate an intention* to accept the abandonment." *Id.* at 96,

141 A. at 643 (citing *Rafferty v. Klein, supra*) (Emphasis added).[8]

The last of the Pennsylvania trilogy declined to reverse a judgment for the landlord where acceptance of surrender, as a matter of law, was argued to have occurred. *Brill v. Haifetz,* 158 Pa. Super. 158, 44 A.2d 311 (1945). There the lease expressly permitted the landlord to relet and to hold the tenant " 'liable for any loss of rent for the balance of the then term.' " Following the tenant's default the landlord relet the storeroom premises together with three other contiguous stores for a term extending six months beyond the expiration of the defaulting tenant's lease. A partition was removed. The new lease made no express apportionment of rent, which was less than the total of the prior, separate rents. It was held that "the lower court was not obliged to hold as a matter of law that the action of the lessor in making a second lease . . . operated as a surrender." The re-renting was "not incompatible with the [original] lease, but in compliance with it," since the premises were leased at a reasonable rental which was to the advantage of the defaulting tenant. The observation in *Rafferty v. Klein, supra,* that a second lease " 'extending far beyond the expiration of the original term' " prevented recovery was said not to have been necessary to the decision in that case. *Id.* at 163, 44 A.2d at 313.

The court in *Armijo v. Pettit,* 32 N.M. 469, 259 P. 620, 61 A.L.R. 767 (1927) reasoned that, since reletting for the balance of the term is undoubtedly proper, there was no basis for varying that rule if the efforts to minimize damages resulted in securing a tenant for a long term.[9]

Those cases in which a surrender by operation of law is found to have occurred, and in which there was a reletting

---

**8.** Ralph v. Deiley is cited in Rhynhart, *Notes On The Law of Landlord and Tenant,* 20 MD. L. REV. 1, 34 n. 236 (1960) for the statement that the "landlord faces the hazard that his act *may discharge* the tenant's liability if the landlord relets the premises for a period longer than the remainder of the term." *Id.* at 34 (Emphasis added).

**9.** Since the old and new rents were the same, the surrender argument was directed to the period between signing and commencement date of the new lease.

beyond the original term, do not rely exclusively on the length of the reletting and do not apply that factor, in and of itself, as effecting acceptance of a surrender as a matter of law. *Welcome v. Hess,* 90 Cal. 507, 27 P. 369 (1891), affirmed a judgment for the tenants where the landlord did not announce his intention to continue to hold the tenants responsible, and relet without notifying them that he was doing so on their account, in addition to reletting for a period longer than the remainder of the original term.[10]

*Casper Nat. Bank v. Curry,* 51 Wyo. 284, 65 P.2d 1116, 110 A.L.R. 360 (1937) reversed a judgment for the landlord on the ground that a surrender had been accepted. There the landlord gave no intimation by word or act that he intended to hold the defaulting tenant for the difference between the rentals, relet for approximately three and one-half months beyond the expiration of the defaulting tenant's term, combined additional lands in the lease to the new tenant and did not attempt to indicate in the new lease the amount of rent received from the lands originally leased to the defaulting tenant.[11]

Reletting beyond the original term has received the strongest emphasis as indicative of a landlord's intent to accept a surrender in the decisions in New York. The New York rule was summarized in *In re Kerr,* 29 F. Supp. 414

---

**10.** Rafferty v. Klein, *supra* and Welcome v. Hess, *supra,* are cited in Michigan Lafayette Building Co. v. Continental Bank, 261 Mich. 256, 246 N.W. 53, 55 (1933) for the proposition that "[o]rdinarily, the execution of a new lease extending beyond the period of the abandoning lessee's term would indicate acceptance of surrender . . . ." However, the original lease in that case expressly authorized a reletting expiring either before *or after* the original term so that the court held that the length of the reletting "cannot be considered evidence of surrender." *Id.* at 260, 246 N.W. at 55. Judgment in favor of the landlord was reversed without new trial because acceptance of a surrender was established by the landlord reletting adjacent premises together with the vacated store, the partition between the two stores was removed, no allocation of the new rent was made to the vacated premises, and, after the new lease was made, demands previously made on the defaulting tenant by way of monthly statements were discontinued.

**11.** W. Burby, *Handbook of the Law of Real Property* 186 (3rd ed. 1965), cites Welcome v. Hess, *supra* and Casper Nat. Bank v. Curry, *supra,* for the proposition that, in spite of notice, "a surrender will result if the lessor rerents for a period longer than the unexpired term of the original lease." Burby also notes that additional factors were involved in each of those cases.

(S.D.N.Y. 1939) in which a surrender was held to have been accepted where the landlord relet for two years beyond the term of the original lease which authorized reletting " 'for the whole or any part of the term from time to time as [landlord] may deem best.' " *Id.* at 415. The court said:

> The courts of New York hold that in the absence of an express provision in the lease authorizing the landlord to relet the making of a new lease is an acceptance of surrender of a then existing lease. Gray v. Kaufman Dairy Co., 162 N.Y. 388, 56 N.E. 903 .... However, in the case at bar the landlord entered into a lease extending beyond the term of the bankrupts' lease. In making such a lease the New York courts say that the landlord will be presumed to be acting for his own account and to have recognized a surrender of the premises in the absence of consent to such reletting. Brill v. Friedhoff, 192 App. Div. 802, 183 N.Y.S. 463 [1920]; Matter of Adams's Estate, 149 Misc. 289, 267 N.Y.S. 910; Matter of Goldburg's Estate, 148 Misc. 607, 266 N.Y.S. 106; Bonsignore v. Koondel, 134 Misc. 344, 235 N.Y.S. 453. [*Id.* at 415-16].[12]

The 1900 decision in *Gray v. Kaufman Dairy Co., supra,* was that an acceptance of surrender occurs by reletting without the consent of the tenant, and that consent cannot be inferred from mere silence. Consent may, however, be given

---

12. Brill v. Friedhoff, *supra,* reversed a judgment for the landlord and remanded for a new trial in order to consider whether the reletting was within a written authorization given by the tenant in light of factors including extensive alterations made by the new tenants and a period of free rent granted by the landlord. The court in Matter of Adams' Estate (Sur. Ct., N.Y. Co. 1933), *supra,* found as a fact that the new lease was for the account of the landlord. Matter of Goldburg's Estate (Sur. Ct., Bronx Co. 1933), *supra,* turned on the landlord exceeding the specific authority given in the original lease which did not contain any consent to a reletting beyond its term or to any free occupancy by the new tenant. Bonsignore v. Koondel (Mun. Ct., N.Y. City 1929), *supra,* is to the same effect as *Goldburg's Estate. Contra,* Dasanat Realty Corporation v. Murray, 138 Misc. 492, 246 N.Y.S. 693 (Mun. Ct., N.Y. City 1930). That court was "reluctant to subscribe to so hard and fast a formula" as enunciated in *Bonsignore v. Koondel,* since the "invisible intent of the parties to such acts is not always so easily sighted," and held that in the "search for intent, the matter of the new term for which the landlord rents to another is not to be considered conclusive; it is only some evidence on this question." *Id.* at 494, 246 N.Y.S. at 696.

in the lease. Thus New York decisions frequently turn on a search for consent to the length of the reletting in the terms of the original lease.[13] Since this Court declined in *Oldewurtel v. Weisenfeld, supra,* 97 Md. at 176, 54 A. at 970, to adopt the rule of *Gray v. Kaufman* we do not find the rationale of the New York decisions to be persuasive.

RESTATEMENT (SECOND) OF PROPERTY § 12.1, Comment *i* at 391 (1977) has adopted an unequivocal position:

> A reletting may be for the benefit of the tenant even though it is for a term shorter *or longer* than the term in the original lease, and even though it is for a rent lesser or greater than the rent reserved in the original lease. Furthermore, the reletting may be for the benefit of the tenant even though various other terms of the original lease are not carried over in the lease to the new tenant. (Emphasis added).

*See also* Schnebly, *Operative Facts in Surrenders,* 22 Ill. L. REV. 117, 128 (1927).[14]

Against the foregoing background, we turn to the trial court's analysis in this action of two decisions of this court. In granting summary judgment for tenants, that court said:

> In *Eidelman v. Walker & Dunlop, Inc.,* 265 Md. 538, 544, 290 A.2d 780, 784 (1972) the court stated that: "A re-rental for a term longer than that under the existing lease, as was done here, is regarded as a surrender by operation of law, since it is an act inconsistent with the landlord-tenant relationship. There is no liability for rent thereafter."

---

**13.** *See* 2 M. FRIEDMAN, ON LEASES § 16.3 at 682 (1974); 2 R. POWELL, ON REAL PROPERTY§ 247[5] at 372.166 (1977).

**14.** The author comments:
It has been argued that reletting for a longer period indicates that such reletting is on the lessor's account, and not on that of the lessee. It is submitted that it shows nothing on this point; all it shows is that the lessor considered it good business to let for a longer period of time, without any necessary determination in his own mind as to who would profit from the new lease. The decisions on this point lay down no very satisfactory rule.

While *Eidelman* is not completely clear whether this factor alone constitutes an acceptance as a matter of law, there is dicta in *Wilson v. Ruhl*, 277 Md. 607, 611, 356 A.2d 544 (1976), which indicates that this is the interpretation which the court intended. In discussing whether sale of the leased property would have released the tenant from liability the Court said that: ". . . had Mrs. Ruhl sold the property, a surrender would have occurred because resale, *akin to reletting for a term longer than the original term is so inconsistent with the tenant's estate as to allow for no other interpretation than that the landlord had reentered in order to accept a surrender.*" [Emphasis in text].[15]

Both the trial court and the Court of Special Appeals were correct in analyzing the above-quoted language as *dicta* but we agree with the Court of Special Appeals that the quoted language was erroneously elevated to a matter of law by the trial court. Neither *Eidelman* nor *Wilson* presented any issue as to whether the landlord, by reletting to a new tenant, had effected a surrender by operation of law, much less presenting an issue as to whether the surrender was effected as a matter of law.

*Eidelman* was a landlord's action against guarantors of the tenant's obligations under the original lease which ran through December 31, 1973. The receiver for the original tenant returned the key September 3, 1968. A new tenant was obtained under a lease beginning May 1, 1970 for a term expiring April 30, 1975 at a *higher* rent. Suit was filed November 2, 1970. A threshold issue was whether the landlord by a letter notice had terminated the original lease

---

15. In Wilson, *supra,* 277 Md. at 613, 356 A.2d at 548, it was also said:

While we regard the brokerage commission paid by Mrs. Ruhl as a necessary expense in mitigation, we are of the opinion that the Wilsons are liable for only two-thirds of that commission because the property was leased for their account only for the eight month period from 1 December 1974 to 31 July 1975, and the reletting for a longer term than the Wilsons' term caused a surrender by operation of law, *Eidelman v. Dunlop & Walker, Inc., supra,* 265 Md. at 544.

as of November 30, 1968. In opposition to that contention the landlord argued that there had been no complete surrender until May 1, 1970 because a subtenant of the original tenant had not been "ousted" until the latter date. The guarantors also sought credit against rent which had accrued prior to May 1, 1970 by way of the increase in rent under the new lease. In reply, landlord asserted that the reletting had "cut off" the guarantors' liability and that the guarantors had benefited from the new lease because 32 months of rental obligation on the guarantors' part was thereby eliminated.

The trial judge in *Eidelman* impliedly found, after trial, that the old lease terminated on the date the new tenancy began. This Court agreed since "[u]ntil then there was no action by the landlord *indicative of an intent to terminate the liability of the tenant* . . . ." 265 Md. at 544, 290 A.2d at 784 (Emphasis added). The guarantors' claim for credit thereby fell since the tenant's liability for rent after May 1, 1970 was terminated. Extinguishment of the old lease by the reletting was not in issue, but an asserted earlier termination was in issue. Thus, on appeal, it was necessary only to look to the conduct of the landlord which earliest indicated an intent to terminate. This was not until the reletting for a longer term, which supported the trial court's finding. It was thereby unnecessary on appeal to address any other factor bearing on the landlord's intent since the landlord did not contend otherwise.[16]

*Wilson v. Ruhl, supra,* involved the breach of the lease of a residence. The landlord claimed rent from the original tenant only up to the date of the reletting and real estate commissions paid to effect the reletting. The landlord, in effect, treated the new lease as terminating the old. The only issues presented for decision were whether the landlord had complied with the statutory duty to mitigate damages upon breach of a residential lease and whether commission expense claimed by the landlord was recoverable. The statement that "resale, akin to reletting for a term longer than the original term, is so inconsistent with the tenant's

---

**16.** The tenant did not rely on any facts that there was no intent to accept a surrender by the reletting.

estate as to allow for no other interpretation than that the landlord had reentered in order to accept a surrender" [17] was made by reference to *Eidelman,* but in the context of the mitigation issue and in an even greater "evidentiary vacuum" [18] than the context in *Eidelman. Wilson* does not hold surrender is thereby effected as a matter of law.

However, where, as here, the issue is whether the prior lease has been terminated, and there is conflicting evidence as to whether the landlord intended to accept a surrender, the length of the reletting may not be viewed in isolation as conclusive of the landlord's intent to accept a surrender. In light of our decision in *Lochner v. Martin, supra,* the other authorities reviewed above and what we believe to be the proper reading of the *Eidelman* and *Wilson* decisions, we hold that a reletting beyond the original term is not the acceptance of a surrender as a matter of law where there is evidence from which the trier of fact could find that the landlord did not intend that result.

As a result, the Court of Special Appeals was correct in reversing the summary judgment granted in favor of Tenants as to the period from November 1, 1976 through August 31, 1982, and in remanding. Since the lease to C.E.L., Inc. extends beyond August 31, 1982, to October 31, 1991, there is a genuine issue as to the Landlord's intent so that denial of the Landlord's Motion for Summary Judgment, and affirmance of that denial, were proper.

*Issue No. 3.*

*Rent From September 10*
*Through October 31, 1976*

The judgment entered in favor of Landlord, after trial on the issue of damages for the period May 1, 1975 through October 31, 1976, awarded full rent through the first third of September 1976 and excluded rent from September 10

---

17. 277 Md. at 611, 356 A.2d at 547.
18. Millison v. Clarke, *supra,* 43 Md. App. at 80, 403 A.2d at 386.

through October 31, 1976.[19] This was the time during which personnel of C.E.L., Inc. were allowed to go on the premises rent free. The basis of the disallowance is not entirely clear. It is clear that the trial court was not finding that an acceptance of Tenants' surrender was effected as of September 10, 1976 and that Tenants have not so contended.[20]

The trial court disallowed Landlord's rent claim for the period of the C.E.L. use preceding its lease commencement "because [Landlord] divested the then tenant in possession of the use of the property he had rented" and as "being the denial of the usage of the premises . . . ." However, there was no factual basis for this conclusion. It is completely clear that Tenants abandoned the premises. On January 16, 1973 Tenants' counsel stated, "My clients are not going to pay Mr. Millison any rent . . ." and on January 17, 1974 advised, "My client will not enter the premises . . . ." There is no evidence that at any time thereafter Tenants sought to re-enter, much less for the period September 10 through October 30, 1976. Rather the abandonment continued. Thus, Landlord's conduct in permitting C.E.L., Inc. to use the premises prior to the commencement date of the C.E.L. lease did not *cause* Tenants either to relinquish possession or to lose the use of the premises. McCormick, *The Rights of the Landlord Upon Abandonment of the Premises by the Tenant,* 23 MICH. L. REV. 211, 215 (1925).

At oral argument Tenants asserted, in substance, that Landlord reentered as the agent of Tenants and could not "give away" the use of the premises. The rights and

---

**19.** No issue is presented as to whether this constituted an apportionment of the September rent or, if so, whether apportionment of rent due September 1 was proper.

**20.** On issue No. 3, Tenants' argument below and on brief here is based upon Lema Realty Corporation v. Najarian, 186 Misc. 752, 65 N.Y.S.2d 323 (Sup. Ct., App. Term 1946), a *per curiam* opinion which states that the landlord "was not authorized to grant the new tenants any concession at the expense of the abandoning tenant . . . ." *Id.* at 752, 65 N.Y.S.2d at 324. The reference is to lack of authorization in the lease. Under the line of New York cases previously discussed, the re-entry and reletting of the landlord requires the consent of the tenant but the lease in *Lema* contained no consent to a rent concession as part of the reletting. Under Oldewurtel v. Weisenfeld, *supra,* 97 Md. at 176, 54 A. at 971, consent of the tenant is not required.

obligations of a landlord whose tenant has abandoned the premises were set forth in *Wilson v. Ruhl, supra,* which summarized the three options which a landlord has at common law in that situation. The second of these is to re-enter the premises for the account of the tenant, attempt to rerent on behalf of the tenant and hold the tenant liable for any deficiency. We said, "The second option amounts to an election by the landlord of assuming a duty to mitigate his damages." 277 Md. at 610, 356 A.2d at 546. *Accord, Williams v. Kaiser Aluminum & Chemical Sales, Inc.,* 396 F. Supp. 288, 292-93 (N.D. Tex. 1975).

Landlord here elected that option. The duty assumed "only requires a landlord to exercise reasonable diligence in an effort to obtain a new tenant." *Wilson v. Ruhl, supra,* 277 Md. at 610, 356 A.2d at 546. We believe that Landlord, having once made the election, continued under that duty so long as the original lease continued. Thus Landlord had a duty to exercise reasonable diligence in re-renting following expiration of the Miles Lease. In our view the broad question is whether, under all of the circumstances, rent free use of the premises by C.E.L., Inc. complied with that duty. It has been observed that, depending on the proof, a rent concession may be inevitable. *In re Garment Center Capitol,* 93 F.2d 667, 668 (2d Cir. 1938) (Augustus N. Hand, J.).[21]

In the instant matter it is necessary to determine whether Landlord, by the use of reasonable diligence, could have obtained rent for the period September 10 through October 31, 1976, either as part of the C.E.L., Inc. lease, or otherwise. If so, then the recovery by Landlord for that period will be only the difference, if any, between Tenants' promised rent and the amount of rent which Landlord should have obtained. RESTATEMENT (SECOND) OF PROPERTY § 12.1,

---

21. There are decisions in which no surrender has been found, but the defaulting tenant has been given full credit for rent payable for the period during which the landlord allowed rent free occupancy. *See* Mayflower Apartments, Inc. v. Sheehan, 236 App. Div. 884, 260 N.Y.S. 943, second appeal, 249 App. Div. 712, 291 N.Y.S. 424 (1936), *aff'd,* 275 N.Y. 498, 11 N.E.2d 314 (1937); Symes Investing Co. v. Wheelock, 55 Colo. 459, 136 P. 65 (1913). These opinions do not set forth the reasons underlying their conclusion. We decline to adopt the rigid rule suggested by them.

Comment *i* at 391 (1977). The record here does not address those issues and a remand is necessary.

In summary, this action should be remanded to the trial court for further proceedings limited to the issues relating to the period September 10, 1976 through August 31, 1982, including the issues of acceptance of surrender [22] and of Tenants' liability, if any, for the period September 10 through October 31, 1976.

> *Judgment of the Court of Special Appeals affirmed in part and reversed in part and case remanded to that court for passage of an order vacating the judgment of the Circuit Court for St. Mary's County and remanding to the Circuit Court for St. Mary's County for further proceedings consistent with this opinion; appellee to pay the costs.*

---

**22.** Rent free occupation of the premises prior to the commencement date of the new lease is also a factor to be considered on the surrender issue. Lochner v. Martin, *supra*, 218 Md. at 523, 147 A.2d at 752. *See also* Schnebly, *Operative Facts in Surrenders,* 22 ILL. L. REV. 117, 129-30 (1924).