## LEDSINGER *v.* BURKE.

1. Where a tenant voluntarily vacates the premises before the expiration of the term, and delivers the keys to the landlord at the latter's request, who retains them and during the term advertises the premises for rent, an implied surrender arises by operation of law, and the tenant is not liable for future rent.
2. There was no error in admitting or rejecting evidence.

Argued February 5, — Decided March 26, 1901.

Distress warrant—appeal.　Before Judge Felton.　Bibb superior court.　December 21, 1899.

*Hardeman, Davis, Turner & Jones,* for plaintiff in error.
*Estes & Jones,* contra.

FISH, J.　Burke sued out a distress warrant against Ledsinger, which was met by a counter-affidavit.　Upon the trial there was a verdict for the plaintiff.　Upon defendant's motion for a new trial being overruled, he excepted.　The evidence in behalf of the defendant was, in substance: that he rented the house and lot from Burke for a year, and, being annoyed by threatening notes which were placed under his door and by attempts to burn the house, he decided, in April, to leave it; that he requested Burke to release him from the contract, and while Burke did not grant the request, he told defendant that he would leave the matter with Holt, Burke's agent, from whom defendant had rented the house, and said whatever Holt did about the matter would be all right; that defendant vacated the house some time in April, after paying the rent to the first of May; that soon after this Holt called upon him and asked for the keys of the house, which defendant delivered to him, and Holt, as the agent of Burke, placed a rent card on the house and endeavored to rent it for Burke.

1. Among the assignments of error made in the motion for a new trial, the defendant complained that the court erred in charging the jury as follows: "In other words, Ledsinger could not rescind alone, deliver up the keys, and say, 'I will not pay rent for the property,' unless his delivery of these keys was received by Burke or his agent and agreed upon as a delivery of possession of the property;" and in charging: "The rescission of a contract or the cancellation of a contract must be by agreement."　There was no contention on the part of the defendant that there was an express agreement between him and the plaintiff, or the plaintiff's agent, that the premises should be surrendered, but his contention was that, under the evidence submitted in his behalf, there was a surrender of the premises by operation of law.　"A surrender is either in fact, by express words, clearly manifesting the intention of the lessee to yield up his interest, or by act and operation of law, when the parties without any express surrender do some act which implies that they have both agreed to consider the surrender

as made." McAdam, Landl. & Ten. 1263. "A surrender in law is where the parties, without any express surrender, do an act so inconsistent with the subsisting relation of landlord and tenant, as to imply an intention that the lessor should be in the same situation as if an express surrender had been made. A surrender of a lease by operation of law may arise from any condition of facts voluntarily assumed by the parties, and incompatible with the continued existence of the relation of landlord and tenant between them." Ib. 1270; Bowen *v.* Haskell, 53 Minn. 480. "Surrender by operation of law results from acts which imply mutual consent to the surrender, independently of the intention of the parties that their acts shall have that effect, and is by way of estoppel." McAdam, Landl. & Ten. 1270. In Talbot *v.* Whipple, 14 Allen, Bigelow, C. J., declared: "The rule of law, as now settled by the recently adjudicated cases, is that any acts which are equivalent to an agreement on the part of the tenant to abandon, and on the part of the landlord to resume possession of the demised premises, amount to a surrender by operation of law." In *Harris* v. *Dub*, 57 *Ga.* 78, this court held: "The fact that the defendant quit the barroom in March, offering the control to plaintiff, and that the plaintiff sent for the keys 'some time' in August, and never tendered them back to defendant, was a resumption of the possession and dominion in August, and the rent should cease from that date, though plaintiff swore that he only took possession to paint the counter." By a typographical error, the word "presumption" appears in the headnote just quoted, in the published report, instead of the word "resumption," which was used in the original. According to Ledsinger's testimony his case was stronger than that of the defendant in *Harris* v. *Dub*, for he testified, in substance, that after he abandoned the premises Burke, through his authorized agent, Holt, called on him for the keys, without explanation or qualification, that he surrendered them, and that Burke, through his agent, retained them and advertised the house for rent. If this be the truth of the case, then Burke resumed the exclusive possession and control of the premises, which was entirely inconsistent with a continuance of the relation of landlord and tenant between him and Ledsinger. In Hegeman *v.* McArthur, 1 E. D. Smith (N. Y.), 147, where a tenant, having determined to remove in consequence of disturbance of the premises, sent the key to the landlord, who de-

clared himself satisfied, expressed a willingness to take the premises, resumed possession for the purpose of reletting, posted the usual notice, "To Let," and then delivered the key to a person employed by him to relet, it was held that these acts and declarations formed an actual rescission of the lease, and terminated the tenancy. See 12 Am. & Eng. Enc. L. (1st ed.) 758 i.

As the above charges of the court limited the jury to the consideration of an express rescission of the rent contract, and were not adjusted to the real contention of the defendant, a new trial must be granted. We do not mean to rule that the mere taking of the keys of a house from the tenant by his landlord will of itself, in the absence of other acts showing an intention to accept a surrender, operate in law to establish a valid implied surrender; but our ruling is, that where a tenant voluntarily vacates the premises before the expiration of the term, and delivers the keys to the landlord, at the latter's request, who retains them and, during the term, advertises the premises for rent, an implied surrender occurs by operation of law, and the tenant is not liable for future rent.

2. There was no error in admitting or in rejecting testimony.

*Judgment reversed.    All the Justices concurring.*