# CHARLESTON.

## GAINER v. GRIFFITH.

### Submitted May 11, 1915.   Decided June 1, 1915.

1. LANDLORD AND TENANT—*Termination of Tenancy—Partial Destruction of Property.*

   Partial destruction of the subject matter of a tenancy, by fire or otherwise, does not terminate the tenancy.   (p. 427).

2. SAME—*Terminaton of Lease—Destruction of Property.*

   The lease of a building impliedly carries the land under it, wherefore destruction of the building by fire does not terminate the lease.   (p. 429).

3. SAME—*Termination of Tenancy—Abandonment of Premises.*

   A tenant's temporary abandonment of the leased premises, in consequence of the destruction of the building by fire, and re-entry of the landlord for the purpose of rebuilding are not conclusive evidence of a surrender by operation of law.   (p. 430).

4.  APPEAL AND ERROR—*Findings of Fact—Evidence.*

> A trial court's finding on an issue of fact, sustained by a decided preponderance of the evidence, cannot be disturbed by the appellate court.  (p. 430).

Error to Circuit Court, Gilmer County.

Action by Lee Gainer against C. L. Griffith.  Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*J. D. Jones* and *John M. Hamilton,* for plaintiff in error.

*C. M. Bennett, L. H. Barnett, R. F. Kidd* and *Linn, Brannon & Craddock,* for defendant in error.

POFFENBARGER, JUDGE:

The judgment here complained of, awarding the plaintiff in an action of unlawful detainer the possession of a certain barn, rests upon findings of fact by the court, a jury having been waived and the case submitted to the court in lieu thereof.

The defenses are three in number; (1), the destruction of the subject matter of the contract and tenancy by fire, working a termination of the lease; (2), abandonment or surrender of the premises; and (3), estoppel on the part of the plaintiff.

The first of these is founded upon the nature of the subject matter of the contract and the terms in which it was demised, and the other two upon acts and conduct of the parties, after the destruction of the barn by fire, and conflicting testimony as to the terms of an agreement or understanding between them.

From both the written lease and the oral testimony an inference arises, that the barn was in some way connected with another one owned by the lessor and occupied by B. G. Stump.  The lease described it as a livery barn situate near a bridge immediately opposite the Glenville Roller Mill in the town of Glenville, "being the main barn and not to include the barn now occupied by B. G. Stump."  Though the plaintiff declares the Stump barn was not a part of the barn leased by him, he admits it was "an ell."  Nothing further

pertaining to the relation of the two barns is disclosed by the evidence.

The term of the lease was five years, commencing July 3, 1912, and the consideration or rental fifteen dollars per month. The lessor reserved, for a period of thirty days from the date of the lease, the use of three box-stalls and space for his "rigs." He also reserved the right to build a shed along the side of the building and upon the lot on which it was situated, but not so as to interfere with the passage-way to the barn through the lot, and conceded to the lessee the use of one end of said shed for the deposit of the manure from the barn. After about one year of occupancy under the lease, the barn and the one adjacent to it, together with practically all their contents, except an automobile and the horses, were completely destroyed by fire. As the lease contained no covenant on the part of the lessee to rebuild, neither he nor the lessor was bound to do so, but, in about one month after the fire, the lessor commenced the building of a new barn of the same general dimensions and plan, on the old foundation, which he completed in about three months from the date of the fire. During the interval between the date of the fire and the completion of the barn, there was neither payment nor tender of rent.nor demand therefor. On the completion thereof, or soon thereafter, the lessee tendered his rent and demanded possession, but the lessor declined his offer and withheld possession of the barn.

The divergence in the argument, in so far as it pertains to the first ground of defense, is found in the application of certain agreed legal propositions, it being contended, on the one hand, that the lease included the land on which the barn stood and that, therefore, the entire subject matter of the lease was not destroyed by the fire; and, on the other hand, that the lease covered and included the barn only, and that, therefore, the entire subject matter of the lease was destroyed, in consequence of which the tenancy came to an end. No land is demised *eo nomine*. The lease conferred, in terms, right of access to the barn through and over a lot described as lying between it and a store building, but, in the leasing or granting clause the barn only was mentioned.

However the barn demised may have been connected with

the other one mentioned in the lease, it was regarded and treated as a separate, distinct and entire building. Intent to demise it as an entirety is disclosed by the reservations of certain stalls and space and right to build an addition to it for partial use of the lessor. For the term specified, the barn was made the property of the lessee, the lessor reserving for a limited time only certain space in it. So amply did the lease cover it that the lessor felt the necessity of reservation of right to build an addition to it. Though the neighboring or adjacent barn is described by the lessee as being "an ell," the one demised was so far separate and distinct as to be deemed susceptible of intelligent and fair, description by the use of the terms "livery barn;" and he adds that the Stump barn was no part of it. Upon these facts, the trial court could consistenly find and hold that the subject matter of the tenancy was an entire building.

A lease of a room, apartment or space in a building carries no interest in the land on which the building stands. *Arbenz* v. *Exley, Watkins & Co.,* 52 W. Va. 476; *Winton* v. *Cornish,* 5 Ohio, 477; *Graves* v. *Burden,* 26 N. Y. 502; 18 Am. & Eng. Ency. L. 308; 24 Cyc. 1044; 2 Taylor Land & Ten. sec. 520; Jones Land & Ten. sec. 102. But the lease of a building, *eo nomine,* carries such land. "So the general rule is well settled today that the grant of a house, store, mill or other building carries with it the land under the building." Jones, Land & Ten., sec. 102. "Ought there to be any doubt that, if this was a demise of the building when erected, it was also a demise of the ground upon which it stood?" Sharswood, J. in *Bussman* v. *Ganster,* 72 Pa. St. 285, holding the lease of a building includes the land whereon it stands. See also 24 Cyc. 1044.

It is not contended that anything short of destruction of the entire subject matter of the tenancy terminates it, and, of course, the ground passing into the tenancy by implication arising from the lease of the building, remains. Hence the obligation to pay rent and the reciprocal right of possession in the lessee continued after the fire. "Whether a lease has been terminated by abandonment on the part of the lessee and the acceptance of, or re-entry upon, the premises by the lessor, is a question of intention. Though a lease, so term-

inated, is said to have come to its end by operation of law, the legal result arises from the acts of the parties. The intention, on the part of the lessee, to abandon, and, on the part of the lessor, to resume possession of the premises on his own account and treat the lease as having been surrendered, ascertained from their acts and conduct, is the test. It is not an express surrender, but a surrender which the law declares and enforces when the tenant leaves the premises with the intention not to return thereto and the landlord takes possession of the same with intention to release the tenant from the obligation of his contract and refuse to let him come into possession of the property.'' *Sult* v. *A. Hochstetter Oil Co.,* 63 W. Va. 329.

Any inference of abandonment and resumption of possession, working a surrender by operation of law, arising from lack of occupancy of the premises, during the interval between the fire and completion of the new barn, and the entry by the lessor for the purpose of rebuilding, is rebutted and overthrown by the trial court's finding as to express intent manifested by the interlocution of the parties after the fire, provided that finding is sustained by the evidence. That it is there can be no doubt. Against the uncorroborated statement of the lessor to the effect that it was agreed he was not to rebuild for the purposes of the tenancy, the court had the positive evidence of the lessee, his son and another witness, to the exact contrary. Admitting his protest of inability conveniently to do so, two of them say the lessee insisted upon it and that he acquiesced and the third says he heard him tell Gainer he would ''look around and get after the lumber as quick as he could.''. Since the evidence thus heavily preponderates in favor of the plaintiff it is hardly necessary to say the finding cannot be disturbed.

In view of this insuperable finding, the lack of an estoppel is perfectly distinct and obvious. The conduct of the plaintiff was perfectly consistent with the right he claims and the defendant could not have been misled by anything he said or did.

Seeing no error in the judgment, we will affirm it.

*Affirmed.*