KARNS *et al. v.* VESTER MOTOR CO.

(*Nashville,* December Term, 1929.)

Opinion filed July 21, 1930.

GREEN, WEBB & BASS, for complainant, appellants.

HODGES & CREEKMORE, for defendant, appellee.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

Suit to recover rent on building from May 1, 1928, to November 10th, at the rate of $150 per month, less certain credits.

The substance of the cause, omitting details, is reduced to this: Complainants rented a warehouse to defendant for the year 1928 at $150 per month. On April 24, 1928, defendant remitted rent to May 1st, accompanied by letter in which it said: "Due to slack business, we are going to have to give up the house May 1st." Complainants replied on April 26th, declining to consent to a cancellation of the lease, but insisting upon performance. Defendant answered by letter on April 27th, denying any contract, but contending that it was a tenant from month to month, and stated that it would not be responsible for rent after May 1st. On June 7, 1928, complainants wrote defendant as follows:

"We now again notify you that we decline to accept the surrender of the lease, and we hereby give you notice that we do not intend to release you from the obligations under the lease and that we will continue to look to you for the rent. In order, however, to minimize the loss as much as possible we will do all we can to rent the premises for your account, and we expect to hold you for any losses that we may sustain."

Defendant did not answer this letter. Complainants thereupon rented the building to others, from month to

month, the total rents received between May 1st and November 10th being $400.

 The chancellor found that complainants, by renting the property as aforesaid, consented, as a matter of law, to the surrender of the premises. The Court of Appeals reversed the chancellor, and held that complainants were entitled to recover rents to November 10th, less rents received, as stated above.

In 16 Ruling Case Law, 972, it is said:

". . . According to the broad view taken by the majority of the cases in this country, upon the abandonment of the premises by a tenant the landlord may refuse to accept a surrender, and after notices to the lessee of his intention to do so, relet the premises for the best rent obtainable, and recover the difference between the rent reserved in the lease and the rent received from the subsequent tenant."

In 35 Corpus Juris, 1093, it is said:

"The acceptance of a surrender is not implied from the mere fact of a reletting of the demised premises, although taken in connection with other circumstances the reletting may amount to an acceptance and work a surrender of the term by operation of law. Whether a reletting shows an acceptance of the surrender depends on whether the landlord relets on the account of the tenant or on his own account. There is no acceptance of the surrender where the reletting is pursuant to a provision of the lease authorizing the reletting on the lessee's account, where the premises become vacant, where the landlord informs the original tenant that he will hold him responsible for the rent, where the reletting was with the consent of both parties and with the express understanding that it was to be without preju-

dice to the rights of either party, where the tenant after breaking his contract interposes no objection to a statement of the landlord that, if the tenant abandons the premises, the landlord will relet them for the tenant's account, or where other acts or agreements show that the reletting was for the tenant's account, and to minimize the amount which he would have to pay after abandonment of the premises.''

These texts are well supported by the authorities, which are listed in the notes thereto.

Where the landlord declines to accept the surrender and notifies the tenant that he will relet the premises for his account, and does so, the tenant is benefited thereby, his damages minimized, and the injury usually resulting to property when vacant is prevented.

We do not hesitate, therefore, to adopt the broad and just rule stated above, which conforms to a general rule approved by this court, requiring the injured party to a contract to do everything possible to minimize his damages. *Johnson* v. *Brown,* 138 Tenn., 395; *Farabee-Treadwell Co.* v. *Bank & Trust Co.,* 135 Tenn., 208; *Plesofsky* v. *Kaufman & Flonacker,* 140 Tenn., 208.

Writ denied.