## C. H. LITTLE & CO. v. GAY APPAREL CORP.

United States District Court
S. D. New York.

Dec. 22, 1952.

John M. MacGregor, New York City, for plaintiff.

Shaine, Weinrib, Mallin & Gross, New York City (Edward J. Mallin and Max Berey, New York City, of counsel), for defendant.

IRVING R. KAUFMAN, District Judge.

Plaintiff, alleging that a Tennessee subsidiary of the defendant, a New York corporation, leased property of the plaintiff and prior to the expiration of said lease abandoned the premises, sues for rent and special damages. The property in question, located in Tennessee, was subsequently relet to a third person for a period beyond the expiration date of the original lease. Defendant here moves to dismiss the action pursuant to Rule 12(b) on the grounds that the complaint fails to state a claim on which relief can be granted and further moves, under Rule 8 to dismiss because the complaint is prolix, repetitious and replete with immaterial and redundant matters and conclusions of law.

Defendant first contends that by operation of law there was a surrender and acceptance of the property by virtue of the subsequent re-letting of the premises to a third party for a period beyond the expiration date of the initial lease. The lease in question permitted the landlord to re-let, but it is alleged did not authorize re-letting beyond the term of the first lease.

The New York rule appears to be that in making a lease for a term which ex-ceeds that of the first lease, the landlord will be presumed to be acting on his own account and to have recognized a surrender of the premises in the absence of consent to such re-letting, In re Kerr, D.C.S.D.N.Y. 1939, 29 F.Supp. 414, although some New York courts have expressed dissatisfaction with "so hard and fast a formula" for determining the intent of the landlord. Dasanat Realty Corporation v. Murray, 1930, 138 Misc. 492, 246 N.Y.S. 693, 696. In the instant case the lease was negotiated in Tennessee and concerns Tennessee realty and it is clear therefore that the Tennessee law of surrender and acceptance governs. Unfortunately, it is not settled how the courts of that jurisdiction would deal with the present case. The only Tennessee authority on the effect of re-letting to which I have been referred is Karns v. Vester Motor Co., 1930, 161 Tenn. 331, 30 S.W.2d 245. That case did not deal directly with the problem of a re-letting beyond the term of the first lease but applied the general rule that the resolution to the question whether a re-letting of the leased premises after the abandonment thereof by the tenant constitutes an acceptance of the surrender, depends on the intention of the parties as gathered from all the circumstances. I am inclined to the view that the Tennessee courts would not hold re-letting for a term beyond that fixed in the original lease conclusive as to intent as a matter of law, D. A. Schulte, Inc. v. Haas, 1926, 224 Mo.App. 365, 287 S.W. 816, but rather would submit for determination by the trier of facts the question whether the landlord's actual intent was to accept surrender.

This conviction is bolstered by an examination of the rationale of Karns v. Vester Motor Co., supra. There the court said, at 30 S.W.2d 245, 246:

"We do not hesitate, therefore, to adopt the broad and just rule stated above, which conforms to a general rule approved by this court, requiring the injured party to a contract to do everything possible to minimize his damages."

Defendant next contends that

(1) there was full disclosure to the plaintiff that it was dealing with a subsidiary;

(2) that the subsidiary would sign the lease; and

(3) that since the defendant did not sign the lease the Statute of Frauds bars recovery.

Wagner v. Manufacturer's Trust Co., 1933, 261 N.Y. 699, 185 N.E. 799. Plaintiff, however, while admitting that it had knowledge that a subsidiary would be "chartered and organized to operate the store, and that such corporation would execute the lease as lessee" (paragraph 2, complaint), alleges that the subsidiary:

"* * * Betty Gay of Jackson, Tennessee, Inc. was organized solely for the convenience of Gay Apparel Corporation, is or was during its existence completely dominated and controlled by the defendant, Gay Apparel Corporation, and that the said Betty Gay of Jackson, Tennessee, Inc., is or was but a dummy corporation, organized and existing for the sole purpose of serving Gay Apparel Corporation. The business transactions of the Tennessee Corporation, if any it had, were directed and controlled by the defendant New York corporation, which owned and controlled all of the stock of Betty Gay of Jackson, Tennessee, Inc. Furthermore, the defendant, Gay Apparel Corporation, conducted the business of the Tennessee corporation as a department of its own business, and made all contracts which the Tennessee corporation made, retaining all the income, and paying the Tennessee corporation, Betty Gay of Jackson, Tennessee, Inc., no part of it. Plaintiff charges further that every act of Betty Gay of Jackson, Tennessee, Inc., and every act of its directors and officers, was dictated by the defendant, Gay Apparel Corporation.

"7. Plaintiff, therefore, charges further that the defendant, Gay Apparel Corporation, is liable for the debts and obligations of its dummy, Betty Gay of Jackson, Tennessee, Inc., and that the ends of justice require that the legal identity of the two be disregarded, and that the obligations of Betty Gay of Jackson, Tennessee, Inc., be deemed and decreed to be the obligations of the dominant parent corporation, the defendant, Gay Apparel Corporation."

The Wagner decision, which of course deals with New York law and is therefore not controlling here, since I have already stated that Tennessee law must govern the rights of the parties, was severely criticized by the Court of Appeals of this Circuit in an opinion by Judge Jerome Frank in Weisser v. Mursam Shoe Corporation, 2 Cir., 1942, 127 F.2d 344, 145 A.L.R. 467, a case strikingly similar to the one now before me. In addition to expressing doubt as to whether Wagner still reflects the law in New York, Judge Frank asserted that:

"The opinion hardly comes to grips with the real issue in such cases as these, which the Supreme Court has said to be whether or not ownership of the subsidiary 'is resorted to, not for the purpose of participating in the affairs of the corporation in which it is held in a manner normal and usual with stockholders, but for the purpose of making it a mere agent, or instrumentality or department of another company.' United States v. Reading Co., 253 U.S. 26, 62, 63, 40 S.Ct. 425, 434, 64 L.Ed. 760.[1] If this is found as a fact, courts have seldom found the Statute of Frauds an obstacle to the imposition of liability, since it does not prevent penetration through an alias to hold the 'real' signatory. Even if, however, New York law were applicable (and, as we shall show, it is not), the rule of the Wagner case would not dispose of the case before us.

"For, in that case, the court laid stress on the landlord's knowledge that it was accepting the subsidiary's signature on the lease; there was, the court said, no concealment by the tenant. Here, however, a jury might well have found a fraudulent concealment by the responsible individuals of the fact that

1. Footnotes in original text omitted.

the ostensible tenant, although named 'Mursam Shoe Corporation,' was only a leasehold corporation which, contrary to representations deliberately made by the other defendants, was never intended to operate a shoe store. This alone would, in our opinion, create a triable issue." 127 F.2d at pages 346, 347, supra.

Judge Frank went on to state:

"Outside of New York, the doctrine hardly seems challenged that a representation that the liability of the subsidiary is the same as that of its parent or affiliate will result in a piercing of the corporate veil of a subsidiary which is in fact undercapitalized, dominated and used as an instrument of the parent. Stark Electric R. Co. v. McGinty Contracting Co., 6 Cir., 238 F. 657; Platt v. Bradner Co., 131 Wash. 573, 230 P. 633; cf. Westinghouse Electric & Mfg. Co. v. Allis-Chalmers Co., 3 Cir., 176 F. 362, 367. Powell (loc.cit., p. 111) says that such a representation is 'almost always fatal.' The Wagner case stands alone in disregarding such a representation. We cannot assume that New Jersey would follow it. A more reasonable assumption is that a New Jersey court would impose liability on the parent, as have most other courts, if the jury found as a fact that the parent ran the subsidiary as a division of its own business and represented that the subsidiary's debts were its own obligations. * * *

"We do not, of course, decide here that Mursam was, in fact, a dummy; we hold only that triable issues were created by plaintiff's allegations and affidavits that Mursam was a tool of the other defendants, and that the lease was made because of representations, believed by plaintiffs, that its liabilities were the obligations of the other defendants." 127 F.2d at pages 348, 349, supra.

The rationale of the Weisser case, not cited by either counsel, is particularly pertinent to the question posed on this phase of defendant's motion.

■■ Plaintiff lays great stress on the absence of an allegation of fraud in the complaint. The absence of such an allegation was disposed of in Tennessee Consolidated Coal Co. v. Home Ice and Coal Co., 1941, 25 Tenn.App. 316, 321, 156 S.W.2d 454, 458, where the court stated:

"It is not necessary for one to show that he has been misled, deceived or actually defrauded, to enable him to invoke this rule. It is enough that the parent corporation's domination of the subsidiary was so complete as to make them practically indistinguishable or to make the subsidiary a mere tool, agency or instrumentality of the parent; and that he will suffer loss unless the parent be held."

■ I conclude that as a matter of Tennessee law both the issue of surrender and acceptance and of parent-subsidiary liability would be deemed legitimate questions of fact to be decided after trial of the case and that the complaint does therefore state a cause of action.

■ I come now to defendant's contention that the complaint should be dismissed because of prolixity. It is true that the seven page complaint is detailed and not drafted with the desired brevity; Rule 8. The plaintiff apparently sought to anticipate and counter defendant's argument based on the Wagner case. I do not believe that it is impossible to answer the matters as set forth in the complaint in a clear and adequate manner or that the defendant has otherwise been prejudiced by the alleged prolixity. See Carl Guttman and Co., Inc. v. Rohrer Knitting Mills, Inc., E.D.Pa.1949, 9 F.R.D. 67.

As alternative relief the defendant has asked that paragraph 9 of the complaint, which pleads a Tennessee action and judgment, be stricken and plaintiff has consented to this. Paragraph 9 is hereby ordered stricken. The motion to dismiss the complaint is denied.

Settle order.