In re The GUARDIAN EQUIPMENT CORPORATION, f/k/a Guardian Security Equipment, Inc., Debtor.

GUARDIAN EQUIPMENT CORPORATION,
Plaintiff,

v.

Clarence L. WHITESIDE, Jr., Mary Kathryn Whiteside, Defendants.

Bankruptcy No. 81–01452–BKC–SMW.
Adv. No. 81–0531–BKC–SMW–A.

United States Bankruptcy Court,
S. D. Florida.

March 19, 1982.

Richard R. Snyder, Patricia Redmond, Miami, Fla., for plaintiff.

George A. Patterson, Deerfield Beach, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE coming on to be heard upon the Amended Complaint to Recover Property of the Estate and the Counter-claims thereto filed herein and the Court, having heard the testimony and examined the evidence presented; observed the candor and demeanor of the witnesses; considered the arguments of counsel, and the Court having jurisdiction over the parties and subject matter of this action, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

The Complaint of plaintiff/counterdefendants, Guardian Equipment Corporation, f/k/a Guardian Security Equipment, Inc., Debtor-In-Possession (hereinafter referred to as debtor) seeks recovery of two (2) security deposits in the amount of Two Thousand Five Hundred Dollars ($2,500.00) for the premises located at 41 Southeast 9th Street in Deerfield Beach, Florida and Twenty Thousand Dollars ($20,000.00) for the premises located at 98 Southeast 7th Street in Deerfield Beach, Florida. These deposits were paid to the defendant/counterplaintiffs, Clarence L. Whiteside, Jr. and Mary Kathryn Whiteside (hereinafter referred to as the landlords) to secure performance of the two separate leases. The debtor alleges that since the second lease was executed unilaterally by the landlords, its enforcement is barred by the Statute of Frauds as enacted under Florida Statutes 725.01. The landlords have counterclaimed, seeking to apply the deposits in question to damages due to alleged breach of these leases, and for recovery of unpaid rents, administrative rents, clean-up expenses, the cost of reletting and reimbursement of various invoices allegedly paid for by the landlords for the debtor's account. The landlords, in a separate count, claim damages under Section 502(b)(7) of U.S.C. Title 11 based on their contention that the second lease was rejected by the debtor after bankruptcy was filed, thereby entitling the landlord to damages under the Bankruptcy Code.

The facts presented at trial evidenced a landlord-tenant relationship between the parties over a six-year period, encompassing two separate locations. The debtor took possession of the first premises located at

9th Street in 1975 under an oral lease agreement between the landlord and the debtor corporation, under which the debtor placed with the landlord a deposit of Twenty-Five Hundred Dollars ($2,500.00). This oral agreement, subsequently memorialized in a written lease signed by both parties, remained in effect until approximately the middle of February, 1981 when the debtor vacated the 9th Street premises. Pursuant to an oral agreement to lease secured by a deposit of Twenty Thousand Dollars ($20,000.00) the debtor took possession of the second premises located at 7th Street. These new premises were specially constructed for the debtor according to plans submitted by the debtor to the landlord's architect. As had been the prior method of their business dealings, the oral agreement was memorialized in a written lease. Correspondence between the parties resulted in revisions to the lease which were incorporated in the final form which was signed by the landlords only. The lease provided for monthly rent payments of Forty-eight Hundred Dollars ($4,800.00) payable on the fifteenth (15th) day of each month for a period of ten (10) years. An additional deposit of Twenty Thousand Dollars ($20,000.00) was anticipated as consideration for an option to purchase. One of the landlords testified that he would not have built the 7th Street premises to the debtor's specifications if he had not been secured by a long term lease agreement.

■ While in possession, the debtor made monthly rental payments of Four Thousand Nine Hundred Ninety-six Dollars ($4,996.00) (including the 4% sales tax) as called for by the lease. The debtor added certain improvements to the premises, including carpeting, door locks, an alarm system, paneling and shelving. Although an officer of the debtor testified that the alarm system could be taken out, the Court finds that the nature of the improvements made by the debtor and valued by the debtor as being worth Ten Thousand Three Hundred Ninety-nine Dollars and 84 cents ($10,399.84) do not lend themselves to an interpretation that the debtor thought itself to be operating on a revokable month-to-month lease arrangement as alleged by the debtor.

■ The debtor relies on the Statute of Frauds, Florida Statutes 725.01, in making its arguments that there was no long term lease in effect between the parties regarding the 7th Street premises. The Court finds that having paid the deposit of Twenty Thousand Dollars ($20,000.00) and the rental amounts monthly as required under the lease, having made significant improvements to the premises inconsistent with month-to-month tenancy, the debtor has partially performed on the lease taking this matter outside the perview of the Statute of Frauds. *Pedrick v. Vidal*, 95 Fla. 952, 116 So. 857 (1928); *S. Lemel v. 27th Avenue Farmers Market, Inc.*, 126 So.2d 167 (Fla. 3rd DCA 1961). This conclusion is reinforced by the testimony of the debtor's president at the time of this transaction, to the effect that there was agreement among the parties as to all essential terms of the lease and it was the intent of the debtor to sign the lease.

■ Having found that a long-term lease was in effect between the parties, the Court must determine whether that lease was terminated, as the debtor contends, by the Three Day Notice served upon the debtor by the landlord; whether, as the landlords contend, the lease was rejected under 11 U.S.C. Section 365 entitling them to damages under 11 U.S.C. Section 502(b)(7); or whether the lease is still in effect.

On September 10, 1981, the same day that the debtor filed its Petition for Bankruptcy, a Three Day Notice, pursuant to Florida Statutes 83.20, was received by the debtor notifying it of default in payment under the lease. The notice advised the debtor to either bring the rent current within three (3) days of receipt of the notice or surrender possession of the premises. The debtor chose to surrender possession. It is the debtor's contention that the landlords, by sending the notice, have chosen their remedy at law and can not now claim further damages.

The Florida Supreme Court has spoken clearly on this subject in its decision in

*Williams v. Aeroland Oil Co.*, 155 Fla. 114, 20 So.2d 346 (1944). Upon default, the Court found that a landlord could chose one of three courses of action:

"He may treat the lease as terminated and resume possession of the premises, thereafter using the same exclusively as his own for his own purposes; or, he may retake possession, of the premises for the account of the tenant, holding the tenant in general damages for the difference between the rentals stipulated to be paid and what, in good faith, the landlord is able to recover from reletting; or, he may stand by and do nothing, and sue the lessee as each installment of rent matures, or for the whole when it becomes due."

It is clear in the case *sub judice* that the landlords did not retake exclusive possession of the premises. Testimony showed that the landlords had made access to the premises available to the debtor and that the debtor had in fact continuously used a portion of the premises to house a large trailer which debtor had used for storage as well as items of furniture and equipment. In *Kanter v. Safran*, 68 So.2d 553 (Fla. 1953), the Florida Supreme Court held that

"the question is whether the possession taken by him is of an exclusive character, with the apparent intention of occupying and controlling the premises as his own, to the exclusion of the tenant, in case the latter desires to return, and this is ordinarily a question of fact."

This Court finds that, based on the facts, the repossession of the premises in question was not to the exclusion of the tenant and did not terminate the lease. The landlords availed themselves of the second alternative available to them, to retake possession for the account of the tenant.

■ Having found that the Three Day Notice of the landlord did not terminate the lease, the Court turns its attention to the question of whether the lease was rejected by the debtor when, acting on the landlord's notice, the debtor vacated the premises after declaring bankruptcy. Only a formal rejection pursuant to statute is sufficient to disaffirm an executory contract. *In re W. T. Grant Co.*, 620 F.2d 319 (C.A. 2 Cir. N.Y.1980). The Bankruptcy Code at Section 365 contemplates that the Court's approval is needed to "assume or reject any executory contract or unexpired lease of the debtor". No such approval has been either requested by or granted to the debtor. The Court finds that, without compliance with the requirements of the Bankruptcy Code, a rejection of the lease cannot be assumed. Therefore, this lease remains in effect and may still be assumed or rejected by the debtor as debtor-in-possession.

The Court finds that the award of damages under 11 U.S.C. § 502(b)(7) is not appropriate at this time as the debtor may still choose at this point to accept the lease and would only be liable for curing the default to date. The landlord's counterclaim in the alternative for the forfeiture of the security deposit as liquidated damages shall be held in abeyance.

■ The Court now turns its attention to the first deposit of Two Thousand Five Hundred Dollars ($2,500.00) on the premises at 9th Street. The evidence introduced showed that the landlord had incurred an expense of Five Hundred Dollars ($500.00) to repair clogged plumbing which resulted from the negligence of an employee of the debtor. That amount of the deposit should be withheld by the landlords. The remaining Two Thousand Dollars ($2,000.00) should be returned to the debtor as the landlord has failed to prove by the evidence presented that the other alleged damages were beyond the "usual wear and tear" allowed for in paragraph Twelfth of the lease on the 9th Street premises.

In accordance with the foregoing, the landlords will be ordered to turn over to the debtor's estate Two Thousand Dollars ($2,000.00). The Court will further order that the lease on the 7th Street premises is in effect and will remain in effect until either accepted or rejected by the debtor. Having made this finding, the Court shall further determine that the issues of statutory damages deriving from such possible rejection are not ripe for hearing at this

time. A separate final judgment shall be entered in accordance with these findings of fact and conclusions of law.