In re TOBAGO BAY TRADING COMPA-
NY, f/k/a World Bazaar, Inc., a/k/a
World Bazaar and a/k/a Curious Car-
go, Debtor.

WB, LTD., successor in interest to JMB
Income Properties, Ltd.-X, d/b/a Pasa-
dena Town Square and d/b/a Collin
Creek Mall, Plaintiff,

v.

TOBAGO BAY TRADING COMPANY,
Defendant.

Bankruptcy No. A90–02195–SWC.
Adv. No. 90–0252A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Dec. 20, 1991.

S. Jarvin Levison, Arnall, Golden & Gregory, Macon, Ga., for plaintiff.

Robert A. Bartlett, Darren K. Hensley, Hicks, Maloof & Campbell, Atlanta, Ga., for debtor/defendant.

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

Before the court are cross motions for summary judgment of plaintiff, WB, Ltd., successor in interest to JMB Income Properties, Ltd.–X ("JMB") (referred to collectively as "lessor"), and of defendant debtor, Tobago Bay Trading Company, ("debtor"). Plaintiff seeks an order requiring debtor to pay postpetition rent during the first 60 days of this case. In the alternative, plaintiff seeks allowance of such postpetition rent as an administrative expense. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The cross motions are granted in part and denied in part based on the findings and conclusions set forth hereinafter.

## FACTS

The parties have stipulated the following facts. In 1988 debtor became lessee of certain nonresidential premises located in Pasadena, Texas pursuant to an assignment of a lease agreement (the "Pasadena Lease"). The Pasadena Lease provided that it would expire on July 31, 1994.

Lessor received a letter from debtor dated June 27, 1989, which stated that debtor wished to terminate the Pasadena Lease on July 31, 1989. Debtor offered to pay lessor base rent for a twelve month period as compensation for the termination. On July 10, 1989, lessor informed debtor that a termination of the Pasadena Lease would not be possible until a replacement tenant was located. On or about January 5, 1990, debtor vacated the premises, removed all of its personal property, cancelled all utility services, and returned the keys to lessor. On January 9, 1990, lessor acknowledged by letter its receipt of the keys and stated that debtor's surrender of possession did not constitute a termination of the Pasadena Lease. Lessor did not relet the premises within 60 days after debtor filed its Chapter 11 petition.

In 1988 debtor became lessee of certain nonresidential premises located in Plano, Texas pursuant to an assignment of a lease

agreement (the "Collin Creek Lease"). The Collin Creek Lease provided that it would expire on October 31, 1993.

On January 9, 1990 debtor vacated the premises, removed all of its personal property, cancelled all utility services and returned the keys to lessor. Lessor was aware of debtor's abandonment at the time it occurred. Lessor accepted the keys, reentered the premises and placed a sign in the window inviting rental inquiries. Lessor never notified debtor that it would not accept the termination of the lease or that debtor would continue to be liable on the lease. Subsequently, lessor entered into a new lease with another tenant for a term which commenced on April 1, 1990.

On February 16, 1990, debtor filed its Chapter 11 petition. Thereafter, on March 12, 1990, debtor filed a motion to reject a number of unexpired leases, including the Pasadena and Collin Creek leases. At the hearing debtor agreed to withdraw its motion as to this lessor and to resolve their dispute in a separate adversary proceeding. The parties agreed that even though debtor was withdrawing its motion as to plaintiff, the debtor could still assert in this adversary that the motion to reject was effective at the earlier of the date the debtor communicated its intent to reject or the date that it filed its motion to reject. Transcript of hearing held May 3, 1990 at p. 14, *In re Tobago Bay Trading Co.* (No. 90–02195). Therefore, no determination of the legal effect of debtor's prepetition abandonment and surrender of either of these leases was made prior to or within 60 days after the order for relief in this Chapter 11 case. Likewise, neither of the leases were assumed by debtor. On May 1, 1990, this adversary proceeding was commenced and WB, Ltd. was thereafter substituted as plaintiff in this proceeding by consent order entered January 4, 1991.

## DISCUSSION

Federal Rule of Civil Procedure 56, made applicable herein pursuant to Bankruptcy Rule 7056, provides for the granting of summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The local rules require that a motion for summary judgment be accompanied by a statement of material facts not in dispute. L.R. 220–5, N.D.Ga. The stipulation of facts submitted by the parties shows that no material facts are in dispute. Therefore, this matter may be resolved on the cross motions for summary judgment.

Lessor asserts claims for postpetition rents under the leases for 60 days postpetition as an administrative expense pursuant to 11 U.S.C. § 365(d)(3). Debtor alleges that its prepetition abandonment and surrender of these leased premises terminated the leases, the leases never became property of the estate, and debtor is, therefore, not liable for any postpetition rent. In the alternative, debtor asserts that it rejected the leases postpetition either by conduct which demonstrated an unequivocal intent to reject or the filing of its motion to reject. In order to resolve these issues, the court must determine when the leases were rejected and the priority, if any, to be accorded to lessor's claim.

A debtor's estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). If debtor's abandonment and surrender of the leased premises terminated the leases, then the leases never became property of the estate. Under such circumstances, the estate would not be obligated to make any rental payments to the lessor.

 The court must look to applicable state law to determine whether debtor's abandonment and surrender terminated the leases prepetition. *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979). Generally, a federal court must apply the law that would be applied by the courts of the state in which it sits. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). While these leases relate to Texas property, neither the lessor nor debtor has raised the choice of law issue or provided the court with any state statutes or case law relevant to the issue of debtor's

prepetition termination. Therefore, the court will apply Georgia law. *See Provau v. State Farm Mut. Auto. Ins. Co.,* 772 F.2d 817, 820 (11th Cir.1985). However, even if the court applied Texas law, its resolution of this issue would be the same.

■ Under Georgia law when a lessee abandons leased property without cause the lessor can either accept the lessee's offer to terminate the lease, in which case a rescission of the lease occurs, or the lessor can refuse to accept the offer to terminate and hold the lessee liable for its obligations under the lease. *See Vaswani v. Wohletz,* 196 Ga.App. 676, 677 (1990); *Noble v. Kerr,* 123 Ga.App. 319, 319–20 (1971). If by their communication and conduct both the lessee and lessor express a mutual desire to terminate the lease then, even in the absence of an express agreement to rescind, "a cancellation or rescission of the contract is effected by [the implied] agreement of the parties...." *Vineyard Village–Georgia, Inc. v. Crum,* 136 Ga.App. 335, 337, 221 S.E.2d 208 (1975) (quoting *Wright v. Kilgo,* 212 Ga. 712, 713, 95 S.E.2d 7 (1956)).

An implied agreement to terminate was found where, after the lessee's abandonment, the lessor solicited the return of the keys from the lessee and, without notifying the lessee that it would be liable for rent for the remainder of the lease term, attempted to relet the premises. *Ledsinger v. Burke,* 113 Ga. 74, 76–77, 38 S.E. 313 (1901); *see also Vineyard Village–Georgia, Inc. v. Crum,* 136 Ga.App. 335, 337–38, 221 S.E.2d 208 (1975). The court found that the lessor's actions and lack of notice to the lessee demonstrated an intent to terminate the lease. *Ledsinger,* 113 Ga. at 76–77, 38 S.E. 313. However, in similar cases where the lessor notified the lessee that he intended to hold the lessee responsible for rent, the courts have consistently held that the lessor did not accept the lessee's surrender of possession even though the lessor retook possession of the property and ultimately relet it. *Crolley, et al. v. Crow–Childress–Mobley #2,* 190 Ga.App. 496, 497, 379 S.E.2d 202 (1989); *Kimber, et al. v. Towne Hills Dev. Co.,* 156 Ga.App.

401, 402, 274 S.E.2d 620 (1980) (citations omitted); *Schachter v. Tuggle, Co.,* 8 Ga. App. 561, 562, 70 S.E. 93 (1911).

■ Application of Texas law to this issue would not lead to a different result because Texas case law also provides that a lease may be terminated by the mutual agreement or conduct of the parties. *Whitman v. Cearley,* 251 S.W.2d 960, 961 (Tex.Civ.App.—Galveston 1952); *see also Blakeway v. General Electric Credit Corp.,* 429 S.W.2d 925, 928–29 (Tex.Civ. App.—Austin 1968); *Walter E. Heller & Co., Inc. v. Allen,* 412 S.W.2d 712, 720 (Tex.Civ.App.—Corpus Christi 1967). "A surrender by operation of law occurs (under Texas law) where the parties without express surrender do some act or acts from which it is necessarily implied that they have both agreed to consider the surrender as made-acts which are necessarily inconsistent with the continued relation of landlord and tenant." *Barret v. Heartfield,* 140 S.W.2d 942, 945 (Tex.Civ.App.—Beaumont 1940) (quoting 35 C.J. 1086). Thus, under both Georgia and Texas case law, an agreement to terminate a lease may be implied by acts of the lessor where surrender of the premises is accepted and the lessor thereafter acts inconsistent with the lessee's rights. Therefore, the court's determination of this issue is the same under either Georgia or Texas law.

■ In the present case, it is undisputed that the parties did not execute a written agreement to terminate the Pasadena Lease. The correspondence between the parties shows that lessor did not actually or impliedly accept debtor's offer to terminate. Upon being informed of debtor's desire to terminate, lessor responded that it would release debtor from liability under the lease only if a replacement tenant was found. After debtor abandoned and surrendered the premises on January 5, 1990, lessor reiterated this position. It is undisputed that lessor did not relet the premises before the expiration of the 60 day period after which the lease was deemed automatically rejected. There simply is no evidence in this record to support debtor's contention of a prepetition termination. Therefore, the court finds that the Pasadena

Lease was not terminated by debtor prior to filing its Chapter 11 petition.

■ On January 9, 1990 debtor surrendered and abandoned the Collin Creek Mall premises by removing its property and signs and turning over the keys. The lessor accepted the surrender of the keys, took possession of the premises, placed a sign in the window inviting rental inquiries, and thereafter leased the premises to a new tenant. The undisputed facts show that lessor made no attempt to enforce the lease or ever informed debtor that it would continue to be liable for rent for the remainder of the lease term. Thus, contrary to its actions in connection with the Pasadena Lease, lessor never indicated that it intended to hold the debtor liable for future rent under the Collin Creek Lease. No notice of default was given to the debtor as a result of its surrender of these premises. Rather, lessor accepted the surrender and exercised exclusive dominion and control over the Collin Creek premises which was inconsistent with debtor's right of occupation. As a result of reentry and placing a sign in the window inviting leasing inquiries, lessor obtained a new tenant who took possession on March 18, 1990 and began paying rent on April 1, 1990. Lessor's conduct evidenced an acceptance of debtor's offer to terminate the Collin Creek Lease, from which an agreement to terminate may be implied. Therefore, the court finds and concludes that the Collin Creek Lease was terminated prepetition upon debtor's surrender of the premises.

■ Next, the court will consider whether debtor rejected the Pasadena Lease postpetition. Section 365(a) provides that "the trustee, subject to the court's approval, may assume or reject any ... unexpired lease of the debtor." 11 U.S.C. § 365(a). The Code does not expressly state what a debtor must do to reject a lease. Debtor contends that by abandoning and surrendering the premises, and thereby demonstrating an unequivocal intent to reject this lease prepetition, it made a valid rejection which became effective upon the filing of its Chapter 11 petition. In the alternative, debtor contends that the filing of its motion to reject effected a rejection of the Pasadena Lease on the day the motion was filed. Lessor asserts that rejection cannot

occur until the court grants a debtor's motion to reject. Consequently, lessor contends that debtor never rejected this lease and that it was in effect until deemed automatically rejected 60 days after the order for relief.

There is a split of authority concerning what is necessary to reject a lease. The minority view is that, despite the qualifying phrase "subject to the court's approval" in § 365(a), conduct showing an unequivocal intent to reject is sufficient. *See In re 1 Potato 2, Inc.*, 58 B.R. 752, 754–55 (Bankr. D.Minn.1986); *In re By–Rite Distrib., Inc.*, 55 B.R. 740, 742–43 (Bankr.D.Utah 1985). These courts reason that the quoted language does not require court approval as a condition precedent to rejection. Rather, the debtor may reject a lease unilaterally, subject to review and reversal by the court. *Id.*

■ The weight of authority, however, holds that a lease is not rejected until the court grants a debtor's motion to reject. *See In re D'Lites of America, Inc.*, 86 B.R. 299 at 302 (Bank.N.D.Ga.1988); *In re Revco D.S., Inc.*, 109 B.R. 264, 267 (Bankr. N.D.Ohio 1989); *In re Guardian Equip. Corp.*, 18 B.R. 864, 867 (Bankr.S.D.Fla. 1982); *In re National Oil Co.*, 80 B.R. 525, 526 (Bankr.D.Colo.1987). "The plain, unequivocal language of Section 365(a) indicates that court approval is required before a lease can be rejected." *In re National Oil*, 80 B.R. at 526. This court agrees with the majority view.

Section 365 is designed in part to ensure greater factual certainty as to the date of rejection of a lease. *Id.; In re Swiss Hot Dog Co.*, 72 B.R. 569, 573 (Bankr.D.Colo. 1987). The minority interpretation of § 365(a) discourages a lessor from reletting property vacated by a debtor until after the court has approved the debtor's rejection because the lessor might become obligated to rent the premises to two lessees if the debtor's motion is denied. *See In re Revco*, 109 B.R. at 269. This interpretation places the burden created by the debtor's indecision on the lessor and contravenes clear Congressional intent that the debtor timely perform all of its obligations under a lease until the lease is assumed or rejected. Therefore, the court concludes that neither

debtor's prepetition abandonment and surrender nor the postpetition filing of its motion to reject effected a rejection of the Pasadena Lease.

Under § 365(d)(4) "if the trustee does not assume or reject an unexpired lease of nonresidential real property ... within 60 days after the date of the order for relief ... then such lease is deemed rejected...." 11 U.S.C. § 365(d)(4). No order was entered approving debtor's rejection of the Pasadena Lease, or extending the time for assumption or rejection. Thus, the Pasadena Lease continued in effect until it was deemed rejected sixty days after the order for relief on April 17, 1991.

■ The court will next consider the appropriate treatment and priority to be accorded to the lessor's claim. Section 365(d)(3) states that "[t]he trustee shall timely perform all the obligations of the debtor , ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is ... rejected, *notwithstanding section 503(b)(1) of this title....*" 11 U.S.C. § 365(d)(3) (emphasis added). Again, there is a split of authority on this issue.

Some courts have held that although § 365(d)(3) requires the court to order the payment of rent as it becomes due under a lease, it does not abrogate the court's duty under 11 U.S.C. § 503 to determine whether those payments qualify for administrative expense status. *See In re Orvco, Inc.,* 95 B.R. 724, 727–28 (9th Cir. BAP 1989); *In re Patella,* 102 B.R. 223, 225–26 (Bankr. D.N.M.1989). This view holds that the debtor is required to pay rent under an unrejected lease as it comes due. However, if the debtor does not fulfill this obligation, the lessor must establish, pursuant to § 503(b)(1)(A), that the rent is reasonable and necessary to preserve the estate in order to receive administrative expense priority for its claim. If the lease is ultimately rejected, it would seem unlikely that a lessor could make this showing. This view only serves to discourage debtor compliance with § 365(d)(3) and encourage defaults.

■ The majority of courts hold, however, that the plain meaning of the provision "notwithstanding section 503(b)(1) of this title" obviates the requirement that administrative expense status be proven. These courts have found "that rents which come due during the first 60 days of a Chapter 11 case are allowable as administrative expenses without necessity for the prior notice and hearing otherwise required by 11 U.S.C. § 503(b)(1)." *In re Cardinal Indus., Inc.,* 109 B.R. 738, 740 (Bankr. S.D.Ohio 1989); *In re Wingspread Corp.,* 116 B.R. 915 (Bankr.S.D.N.Y.1990); *see also Cobb Place Associates v. C.T. Crew, Ltd.; (In re C.T. Crew, Ltd.),* No. 90–07368 (Bankr.N.D.Ga. January 22, 1991); *In re Cardian Mortgage Corp.,* 127 B.R. 14, 21 B.C.D. 1131, 1132 (Bankr.E.D.Va.1991); *In re Granada, Inc.,* 88 B.R. 369, 371–72 (Bankr.D.Utah 1988); *In re Dieckhaus Stationers of King of Prussia, Inc.,* 73 B.R. 969, 971–72 (Bankr.E.D.Pa.1987); *In re Longua,* 58 B.R. 503, 504–05 (Bankr. W.D.Wis.1986). This court finds this to be the better view because it comports with the plain language of § 365(d)(3). As stated by the Supreme Court, where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)). Therefore, the court concludes that lessor's claim for rent that came due under the Pasadena Lease during the first 60 days postpetition is entitled to treatment as an administrative expense priority.

Consistent with the requirement that obligations be performed timely, rent obligations should ordinarily be paid concurrently with other administrative expenses. However, if it appears that the estate will be unable to pay all administrative claims in full, payment may be deferred as the lessor is entitled only to its pro rata share of available funds. *In re Dieckhaus,* 73 B.R. at 973; *In re Cardinal,* 109 B.R. at 742. The debtor's ability to pay has not been raised as an issue in this case.

The parties have stipulated that debtor was obligated by the Pasadena Lease to pay rent of $5,660.55 per month. Two

rental payments came due during the 60 days after the order for relief. Therefore, lessor's Chapter 11 administrative expense claim for the postpetition rent under the Pasadena Lease is allowed in the sum of $11,321.10. Because the Collin Creek Lease was terminated prepetition, lessor's claim for postpetition rent under the Collin Creek Lease is denied. Thus, the cross motions for summary judgment are allowed in part and denied in part.

Accordingly, WB, Ltd., as successor in interest to JMB Income Properties, Ltd.–X, d/b/a Pasadena Town Square, is granted summary judgment against the debtor in the sum of $11,321.10, for two monthly rental payments under the Pasadena Lease which amount is allowed as a Chapter 11 administrative expense. The debtor is granted summary judgment against plaintiff WB, Ltd., and WB, Ltd.'s claim for Chapter 11 administrative expense priority for two monthly rental payments under the Collin Creek Lease is denied. Judgment shall be entered accordingly.

IT IS SO ORDERED.