## CIRCUIT COURT OF THE CITY OF NORFOLK

Ritsa G. Merjos,
Trustee

v.

Richard H. Warren

December 15, 1999

Case No. (Law) L98-2386

BY JUDGE EVERETT A. MARTIN, JR.

I find that Mr. Warren abandoned the leased premises, which were used for commercial purposes, in early June of 1998. Mrs. Merjos had the lock to the building on the premises changed on June 17, 1998. That same day or soon thereafter, she had a "For Rent" sign put on the property. Sometime shortly thereafter, Mr. Warren became aware of the sign on the building. Mrs. Merjos and Mr. Warren never spoke or corresponded with each other about their actions or intentions. Mr. Warren had paid the rent through May 15, 1998. There was no evidence that the property has since been rented to another tenant.

It is agreed that this case is to be decided under the common law. Paragraph 11 of the lease gives the landlord a remedy for the tenant's default, but that remedy is optional and it was not used here. At common law, the landlord had at least two remedies when the tenant abandoned the property. He could allow the property to remain vacant and recover rent, or he could re-enter the premises and terminate the lease. *Crowder v. Virginian Bank of Commerce*, 127 Va. 299, 103 S.E. 578 (1920). As these remedies require a landlord either to allow his property to remain unproductive and invite vandalism or to relinquish his rights against the tenant for future rent, many courts recognize a third remedy. A landlord may re-enter the property without terminating the lease and attempt to re-let the property for the benefit of the

tenant. In *Hoster-Columbus Associated Breweries Co. v. Stag Hotel Corp.*, 111 Va. 223, 68 S.E. 50 (1910), the landlord re-entered the property after the tenant abandoned it. The landlord modified the premises and re-let to another tenant. When the landlord sued the first tenant for rent, the tenant claimed the landlord had accepted its surrender. The Supreme Court disagreed noting that the landlord's actions were done with "the knowledge and acquiescence and on behalf of the [tenant] for the purpose of minimizing its loss." 111 Va. at 226, 68 S.E. at 51. The Supreme Court of Virginia has never explicitly recognized this third remedy in the absence of the tenant's "knowledge and acquiescence," but the Court of Appeals for the Fourth Circuit apparently did in *tenBraak v. Waffle Shops, Inc.*, 542 F.2d 919 (4th Cir. 1976), a case applying Virginia law.

The question in this case is does the landlord's re-entry after the tenant's abandonment and his attempt to re-let the property without the acquiescence of the tenant constitute an acceptance of the tenant's surrender of the premises? The law is well established that the landlord's acceptance of the surrender may be express or it may be implied by law from facts of the case showing the landlord's assent. There is no evidence here showing an express acceptance by the landlord.

The courts do not agree on what constitutes an implied acceptance. Some courts, apparently the minority, find that the landlord's re-entry is an acceptance of surrender unless the landlord gives the tenant notice that the re-entry is not an acceptance of surrender and that it is made to re-let the property for the benefit of the tenant. See *Jennings v. First National Bank*, 225 Mo. App. 232, 30 S.W.2d 1049 (1930); *Karns v. Vester Motor Co.*, 161 Tenn. 331, 30 S.W.2d 245 (1930). This view is also expressed in the Restatement (Second) of Property, *Landlord and Tenant*, § 12.1, comment i.

The majority of American courts decide the question based on the landlord's intent as determined from all the facts. See, for example, *McGrath v. Shalett*, 114 Conn. 622, 159 A. 633 (1932); *Conner v. Jordin*, 37 Del. 203, 181 A. 229 (1935); *Biggs v. Stueler*, 93 Md. 100, 48 A. 727 (1901); *Gainer v. Griffith*, 76 W. Va. 426, 85 S.E. 713 (1915). See also 3 A.L.R. 1082, 52 A.L.R. 154, 61 A.L.R. 773, and 110 A.L.R. 368 for other cases. This was also the opinion of Judge Kent in the only reported Virginia case I could find on the issue. *Hewitt v. May*, 3 Va. Cir. 253 (1984). This is also the common law of England, *Oastler v. Henderson*, L.R. 2 Q.B. Div. 574, 46 L.J. Q.B. N.S. 607, 37 L.N.T.S. 22 (1877), which by Code of Virginia (1950), § 1-10, is the rule of decision except as altered by the General Assembly. The General Assembly has passed no statute on this issue.

As may be expected when an issue is decided by a review of the facts, the facts considered vary, the courts differ on the significance to be given to the same fact, and the results of the cases are inconsistent. Common facts appearing in the cases are these. Did the landlord re-occupy the property for his own purposes? Did the landlord give the tenant notice that he was not accepting surrender of the premises? Did the landlord give the tenant notice of his intent to re-let the premises for the benefit of the tenant? Did the landlord accept or refuse the tenant's return of the keys? Did the landlord dispose of personalty the tenant left on the premises? Did the landlord alter the premises in a manner that rendered them unusable by the tenant? Other factors are considered if the property is re-let, but as no re-letting has occurred here, those factors need not be discussed.

Most courts that decide the question based upon the landlord's intent also hold that the landlord's re-entry onto the premises and his placement of a "For Rent" sign thereon do not constitute an acceptance of surrender. *Owens v. Ramsay*, 213 Ky. 279, 280 S.W. 1112 (1926); *Roberts v. Wish*, 265 Mass. 179, 163 N.E. 892 (1928); *Novak v. Fontaine Furniture Co.*, 84 N.H. 93, 146 A. 525 (1929); *McSweeney v. Dorn*, 104 Vt. 110, 158 A. 88 (1932); *Oastler, supra*. The courts have reasoned that those actions alone do not prevent the tenant from re-occupying the property. To establish an acceptance, the courts generally require that the landlord commit some unequivocal act that demonstrates an assumption of absolute control over the premises excluding any rights of possession of the tenant. *Oastler, supra*; *Ledsinger v. Burke*, 113 Ga. 74, 38 S.E. 313 (1901); *Eidelman v. Walker & Dunlop, Inc.*, 265 Md. 538, 290 A.2d 780 (1972); *Roberts, supra*; *Ralph v. Deiley*, 293 Pa. 90, 141 A. 640 (1928). The tenant has the burden of proving the landlord's acceptance of surrender. *Oastler, supra*; *Motch's Adm'r. v. Portner*, 237 Ky. 25, 34 S.W.2d 744 (1931); *Eidelman, supra*; *Ralph, supra*; *English v. Standard Optical Co.*, 814 P.2d 613 (Utah App. 1991); *McSweeney, supra*.

In *Phene v. Popplewell*, 12 C.B. (N.S.) 334, 142 Eng. Rep. 1171 (1862), the landlord's painting out of the tenant's name from the premises and his subsequent notice to the tenant that he was taking possession were held by the judges of the Court of Queen's Bench to be such unequivocal acts. In *Ledsinger, supra*, the landlord re-entered the property, put a "for rent" sign on it, and demanded that the tenant return the keys. The tenant did return the keys. The Supreme Court of George held that these actions showed an acceptance of surrender.

The only act that could be considered unequivocal here is the changing of the lock. The act of changing the lock is not considered an acceptance of surrender if done to safeguard the property or any valuables inside the

494

building. *Revlock Properties, Ltd. v. Dixon*, 25 P & CR 1, CA (1972); Halsbury's *Laws of England*, vol. 27(1), ¶ 527 (4th ed. 1994). In *English v. Standard Optical, supra*, the landlord's changing of the lock was held not to constitute an acceptance of surrender, but there the landlord gave the tenant a key to the new lock and the tenant was never denied access to the property. 814 P.2d at 618.

There was no evidence here that the landlord had to change the lock to gain access to or to safeguard the building. The evidence showed that the property left in the building had little value. Nor was there evidence the tenant had threatened to or might vandalize the property. The landlord never gave the tenant a key to the new lock. Based upon the landlord's demeanor, I find she had become disgusted with the tenant's habitual tardiness in his payment of the rent and that the changing of the lock was done primarily to exclude the tenant from the building. I further conclude that this act, when considered with the placement of a "For Rent" sign on the building constituted an acceptance of surrender.

The landlord is thus entitled to recover rent that accrued through June 17, 1998. Mr. Flax seemed to concede during the argument of the case that the tenant would not be entitled to apportionment of the rent for the period June 15 to July 14, 1998, and neither counsel addressed the issue in their briefs. I have done no extensive research on the issue, but the law seems to be that the tenant is not entitled to apportionment in this circumstance. 49 Am. Jur. 2d, *Landlord and Tenant*, §§ 261, 262; 52 C.J.S., *Landlord and Tenant*, § 494. As the rent was due on the 15th day of each month and the rent was paid through May 14, the tenant owes two months rent, that is, $8,000.00. I deny the landlord's claim for real estate taxes and storm water fees as there was no evidence to establish how much the tenant owed for these on June 17. As it was agreed the tenant is entitled to a $4,000.00 credit for the security deposit, I find the plaintiff is entitled to judgment for $4,000.00 and costs.